# HAIGLER v. SOUTHERN ADVANCE BAG & PAPER CO.*

## No. 4310.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

Goff & Goff, of Arcadia, for appellant.

John J. Peters, of Winnfield, for appellee.

DREW, J.

Plaintiff is the owner of the S. ½ of the S. W. ¼, section 30, township 13 north range 3 west, in Winn parish, La. On August 22, 1925, he sold certain timber on this and other land to Hodge-Hunt Lumber Company, describing the timber as follows:

"All the merchantable timber growing, standing and being on the following described land situated in Winn Parish, Louisiana."

The deed contained the clause whereby the Hodge-Hunt Lumber Company agreed to cut

*Rehearing denied June 29, 1932.

and remove the timber from the land within five years, and giving it the right to extend the time for five additional years by paying $75 per year. On August 24, 1927, Hodge-Hunt Lumber Company sold this timber, with other timber, to defendant, describing the timber as all the merchantable timber on the land.

On August 16, 1930, defendant paid to plaintiff $75 for a one-year extension as provided in the deed from plaintiff to Hodge-Hunt Lumber Company. The payment of the $75 extended the time within which to cut and remove the timber to August 22, 1931. In the early part of June, 1931, defendant began cutting and removing the timber from the land. Plaintiff filed with defendant a written protest on the ground that defendant was not cutting the timber for the purpose that it was sold. Defendant did not heed the protest. It continued to cut and remove the timber, and on July 31, 1931, it had finished cutting and removing the timber from this land.

Plaintiff filed this suit, alleging that defendant had trespassed upon his land and cut the timber thereon, and seeks to recover the following amounts: $1,700 for 850 cords of pulp wood cut and removed from the land, at a manufactured value of $2 per cord, and in the alternative, for $850, the alleged stumpage value of the timber at $1 per cord; and $25 for damage to fence due to trees having been cut down on same; and $175 for damage done to small timber which was not cut and removed.

Plaintiff alleged that when he executed the timber deed to Hodge-Hunt Lumber Company on August 22, 1925, it only conveyed timber then of such size, quantity, and grade to make sawlogs, as governed by the prevailing custom and practice then in use by sawmills in the section where the land was located as to the size of timber and the distance from the ground the trees were cut and as fixing the stump measurement; that he owns all the timber since grown to such size; that said timber could only be used as sawlogs to manufacture lumber, and for no other purpose; that defendant did not intend using it for such purpose and was therefore without right to cut and remove it; that he never parted title to the pulp wood and pulp timber and timber suitable for making cross-ties. He alleged legal and moral bad faith on the part of defendant. He further alleged that at the time of executing the timber deed, pulp mills were unknown in that section of the country. He further alleged that defendant cut and removed 850 cords of pulp wood from his land, for which he sued for its value.

Defendant filed a plea of vagueness and an exception of no cause of action, which were overruled by the lower court. It then filed a plea of estoppel, based upon the fact that plaintiff accepted the $75 from defendant for a one-year extension of time within which to cut and remove the timber, knowing at the time that defendant was engaged in a business in which only pulp wood was used; that defendant was a purchaser on the faith of the recorded title and no secret equities, customs, and private understandings between Hodge-Hunt Lumber Company and plaintiff can be charged to it; that the right of ingress and egress is specially given in the deed, and plaintiff cannot now contradict the plain provision of that act. The plea was referred to the merits.

Defendant reiterates in its answer the allegations made in the plea of estoppel and alleges its right under the deed to remove any and all the merchantable timber on the land. It alleged that, according to custom and practice prevailing in that section of the country, merchantable timber was any timber measuring six inches and up at the stump, and that it cut no timber under eight inches at the stump, except such as was necessary to cut in making roads to remove the timber after it had been cut. It further alleged the stumpage value of the timber was 50 cents per cord. It denied owing plaintiff any amount, and prayed that his demands be rejected.

The lower court found for plaintiff and rendered judgment in his favor in the sum of $253.25, finding that 675.35 cords of pulp wood were cut and removed from plaintiff's land; that one-half of it was from timber under ten inches at the stump, at a height from the ground as is customary to cut timber for sawlogs; that the prevailing price of pulp wood was 75 cents per cord. It fixed the stump measurement of merchantable timber in that locality at ten inches at the stump. It rejected the amounts claimed for damage to small timber not cut, and damage to fence. Defendant appealed and plaintiff has answered the appeal, praying that the judgment be increased by allowing for 850 cords of pulp wood and increasing the price per cord to $1.50. He abandons his claim for the item of damage to the fence and to young timber.

■ The plea of vagueness and exception of no cause of action were properly overruled by the lower court and are not seriously urged here. The plea of estoppel was referred to the merits and, while the record does not disclose that it was specifically overruled, it necessarily had to be in order for judgment to be for plaintiff.

■■ Defendant acquired only whatever rights Hodge-Hunt Lumber Company had to the timber in question. It could acquire no greater right unless it was given by plaintiff. The fact that plaintiff accepted $75 from defendant for an extension of time within which to cut and remove the timber, even though plaintiff knew that defendant was engaged in the pulp mill business, did not change the rights of either under the timber deed. Plaintiff sold all the merchantable timber as fixed by the custom of sawmills in securing sawlogs.

When he extended the time for cutting the timber, it in no way changed merchantable timber measured by sawmill standard to pulp wood timber measured by pulp wood standard. He merely extended the time within which to remove the timber he had sold to Hodge-Hunt Lumber Company. The question of secret equities and private understandings does not enter in any way into a solution of this question. The $75 was only for an extension of time and was not a consideration for changing the kind of timber sold to a different kind which would include smaller timber than that which was considered merchantable timber at the time of the execution of the timber deed. There is no doubt that plaintiff knew at the time he accepted the $75 from defendant that defendant was engaged in operating a pulp mill for the manufacture of paper commodities, and the plea of estoppel, in so far as it applies to plaintiff's claim that the timber, even though classed as merchantable timber by the sawmill standard, could not be removed from the land to be used by a pulp mill or for any other purpose other than for sawlogs for manufacturing lumber, should be sustained. If such contention otherwise has any merit, we do not think it has under the ruling in Lampton Realty Co. v. Kerr, 154 La. 843, 98 So. 266. In all other respects the plea of estoppel should have been overruled.

■ It therefore follows that defendant had the legal right of ingress and egress for the purpose of cutting and removing from this land all merchantable timber. The term "merchantable timber" as used in the deed will have to be interpreted in order to arrive at the intention of the parties to the deed. The smallest size of the timber in diameter at the stump, ordinarily taken by the lumber companies in that locality at the date of the execution of the deed, is a proper manner of fixing what is, by custom and usage, merchantable timber, and thereby fixing the size of timber intended to be sold and purchased. Likewise, the custom and practice generally at that time as to the distance from the ground the trees were cut and as to the distance from the ground the measurement of the stump should be taken in order to arrive at the diameter of the tree at the stump, in determining whether the timber is merchantable timber or not. The preponderance of testimony is that timber measuring eight inches in diameter at the stump was considered merchantable timber in that locality by the lumber companies operating there. The record shows that the lumber companies, by usage and custom, were authorized to cut timber as merchantable timber measuring eight inches and up at the stump. Whether it was cut as small as eight inches, ten inches, or twelve inches at the stump was in the discretion of the lumber company. If the haul was long they took the larger timber. If the haul was short they took the timber down to eight inches at the stump. It was entirely in the discretion of the lumber companies. Under the testimony in this case we are justified in fixing as the intention of the parties in selling all merchantable timber at the date of the deed from plaintiff to Hodge-Hunt Lumber Company to include all timber eight inches and up at the stump.

The record further discloses that the height of the stump left after cutting the timber, in the vicinity of the land upon which timber involved in this suit was cut, before and at about the time of the deed from plaintiff to Hodge-Hunt Lumber Company, ranged from twelve inches to twenty-four inches; that the average height of most of the stumps was about sixteen inches. We, therefore, are justified in fixing as merchantable timber, in the meaning and intention of the parties to the deed from plaintiff to Hodge-Hunt Lumber Company, all timber measuring eight inches and up, at a point on the tree sixteen inches from the ground. We base this ruling upon the fact that at the date of the deed from plaintiff to Hodge-Hunt Lumber Company there was not a pulp mill in that section of the state. No pulp wood had been purchased in that vicinity. Hodge-Hunt Lumber Company was only engaged in the sawmill business and, clearly, neither plaintiff nor Hodge-Hunt Lumber Company had, at the time, any thought of the timber being used for pulp wood. And neither the seller nor purchaser contends it was sold or purchased for any other purpose than to be used as sawlogs.

The facts of this case are entirely different from those in the case of Antoine Lumber Co. v. Southern Bag & Paper Co., 171 La. 696, 131 So. 852, 853. In that case the deed called for only such timber as "can and will be removed as sawlogs." In this case it calls for "all merchantable timber." In the Antoine Case the defendant removed all the sawlogs on said tract, then proceeded to cut cross-ties and to remove the pulp wood therefrom. Recovery was allowed for the value of the cross-ties and pulp wood taken from said land.

The facts of this case are also different from those in Lampton Realty Co. v. Kerr, 154 La. 843, 98 So. 266, 267. The questions to be determined in that case and the one at bar are very similar, but the proof is different. The Lampton Realty Case involved the proper interpretation to be placed on a deed which conveyed "all the pine timber" on a tract of land, containing 9,290 acres, the timber being estimated at 51,600,000 feet, and the price being at the rate of $1.50 per thousand feet. The facts are that the purchaser had cut and removed practically all the timber when it failed. Under judicial proceedings its property was sold to one Cave, who sold the remaining timber on a part of the

land to defendant, who began erecting houses and coal kilns upon said land for the purpose of converting all the by-products, saplings, pine knots, and tree tops left by the lumber company, the original purchaser, after cutting the timber into pulp and charcoal. He was enjoined from utilizing any of the timber except that suitable for sawlogs under the custom and practice then prevailing and in use by sawmills in the section where the land was located. The court sustained the injunction, stating the facts and its conclusion in the following language:

"It is conceded that either party had the right to introduce evidence to show the real intent of the parties to the timber deed and to explain the meaning of the term 'pine timber' as used in the deed. The evidence shows that before the sale the Lumber Company caused an estimate to be made of all the standing pine trees on the land measuring 12 inches or more in diameter 2 feet above the ground. No trees under that dimension were taken into account, and the price paid and agreed to be paid was based on that estimate. The deed itself expressly declares 'that the timber standing thereon and hereby conveyed' amounts to 51,600,000 feet. It is also shown that at the date of the sale in question it was practically the universal custom in the locality of this timber, with but few exceptions, to sell only such timber as could be manufactured into lumber with profit, and it is a fact that the Greenlaw Lumber Company during its entire operations did not cut and saw into lumber any timber smaller than 12 inches in diameter 24 inches above the ground. Nor did that company in purchasing the timber on the land here involved intend or expect to use any timber under the given dimensions.

"The president of the company states, it is true, that he felt that he was purchasing all the timber that was on the land, and that there would be no question raised as to any timber that the mill would use; still he says that he did not anticipate using any small trees and did not use any under 12 inches from the land in question. He did not consider trees under 12 inches commercial, and they were unprofitable. There were other witnesses who testified to the same effect.

"In view of the statement in the deed 'that the timber standing thereon and hereby conveyed amounts to 51,600,000 feet,' and that the amount of timber thus conveyed was based on an estimate of the standing trees measuring 12 inches in diameter 24 inches above the ground, and taking into consideration the testimony of the parties as to their construction of the terms of the deed and the custom prevailing among timber dealers at the time, our conclusion is that it was the intention of the seller to sell and of the buyer to buy only such timber as was then suitable to be manufactured into lumber, or that

might become suitable to be so manufactured any time during the period of 20 years in which the purchaser was given the right to cut and remove the said timber. The purchaser could not be restricted to the size of the timber suitable to be sawed into lumber at the date of the contract. He had 20 years within which to cut and remove the timber, and all trees which from growth became suitable to be manufactured during that period were included in the purchase.

"The deed, however, did not carry with it a grant of the saplings and undergrowth which would remain such at the end of the license period. Nor did it include any of the pine timber not suitable for lumber, nor any of the pine knots or pine tops, however valuable they might be for other purposes.

"At the time of the original timber deed there was no market for pulpwood, charcoal, pine knots, or cross-ties in that section of country, and neither the seller nor the buyer had any thought that such things would become commercial at any time in the future. It would be unreasonable, in the light of the facts, to hold that a sawmill company, extensively engaged in manufacturing lumber for the market, in purchasing pine timber for that exclusive purpose, contemplated using the small saplings, pine knots, and tree-tops for conversion into pulp for making paper or into charcoal, a business entirely foreign to that in which the lumber company was engaged, and a business not then even remotely thought of in that immediate section of the country."

In the case at bar there is no testimony to show on what basis the purchaser, Hodge-Hunt Lumber Company, arrived at the value of the timber. The timber is not shown to be estimated in feet, or otherwise, and there is no price per thousand feet fixed by the testimony. The deed only recites "all merchantable timber" on the tract, and the consideration fixed at $1,000. It differs also in the fact that Hodge-Hunt Lumber Company had not cut and removed any timber from the land involved in this suit. The land, at the time defendant began cutting, had on it all the timber originally bought by Hodge-Hunt Lumber Company. Although the facts in the Lampton Realty Case are different, the rule laid down therein, we think, is applicable to the case at bar, and that defendant was within its legal rights in going onto the land of plaintiff and cutting and removing only such timber as was suitable for sawlogs, measuring eight inches, and up, at the stump; stump measurement to be taken at a point sixteen inches from the ground. It, therefore, follows that it was without legal right to remove from the land timber of a smaller size, or the tree tops.

■ Plaintiff contends that defendant was in legal bad faith in going onto the land and

cutting the timber, especially that which was unfit for sawlogs. Bad faith cannot be presumed and has not been shown. Therefore, defendant must be held to be in good faith, especially so in this case, as, under the facts of the case, the question is res nova in this case.

The preponderance of testimony is that the value of pulp wood at the time defendant cut and removed the timber was 50 cents per cord when located as was plaintiff's timber.

The only remaining questions for determination are: Did defendant cut and remove any timber under eight inches at the stump, as measured sixteen inches from the ground, and did it cut and remove any tree tops from the land? If so, to what amount?

Plaintiff contends that defendant cut and removed 850 cords of pulp wood from the land, and that at least half of it was made from timber not suitable for sawlogs. Defendant denies that it cut and removed any timber from said land that was not suitable for sawlogs. Defendant did, however, bring out on cross-examination that it cut the tree tops into pulp wood. Plaintiff offered the following testimony on the quantity of timber cut into pulp wood that was not suitable for sawlogs. Plaintiff testified that the timber was cut four or five inches from the ground and all timber over five inches in diameter was cut. He was asked the following questions:

"Q. Are you in a position to say what per cent. of the timber they took off of your land for pulpwood was over ten inches in diameter at the stump? A. No, I don't know that I could say how much there was. I could not state just exactly how much there was, but it would have been something like half. It would run about half and half.

"Q. In other words, half of the timber was under ten inches in diameter at the stump and the other half was over ten inches that was cut? A. Yes, sir."

He further testified that if they had cut the timber ten inches, and above, twenty-four inches above the ground, they would have taken about one-half of the timber, and if they had cut it eighteen inches above the ground there would not have been much difference in the amount left in cutting it twenty-four inches above the ground. If they had cut it twelve inches above the ground, there would have been 40 to 45 per cent. of it left. He testified that he counted the stacks of pulp wood after it was stacked and arrived at the number of cords; that from looking at the wood after it was cut and stacked he thought about 50 per cent. of it came from trees under ten inches in diameter at the stump. He only noticed a few of the stumps. He did not measure any of them or any of the wood in the stacks. He did not measure the height of any of the stumps or the distance from the stumps to the tops, and he did not count the stumps.

Mr. Miller testified that he was on the tract of land every day while the timber was being cut, with plaintiff and his son; that he helped to count the stacks of pulp wood; that timber from five inches to two and one-half feet in diameter was cut; that about half of the pulp wood he saw in the stacks came from trees under ten inches in diameter; that trees were cut from flush with the ground to about four inches above the ground; if only trees that would measure ten inches in diameter twenty-four inches above the ground had been cut there would have been 75 per cent. of the timber left. He did not measure any of the trees or stumps or the wood in the stacks, or the distance from the stumps to the tops, and did not count the trees cut.

Mr. Temple testified that defendant cut the timber on plaintiff's land leaving the stumps of an average height of five inches; that, taking the trees as the count, at least 50 per cent. of those cut were under size. He was asked the following questions:

"Q. Then it is your testimony that only half of this timber would have been utilized as saw logs if it had been cut as other tracts have been cut there by the Hodge-Hunt Lumber Company that they did use for saw logs? A. One half of the trees or more. I don't know whether it would have scaled out one half or not.

"Q. Are you in a position to testify as to how much timber was taken under ten inches at the stump? A. Fifty or sixty per cent of it was taken, taking it at the stump."

On cross-examination he explained what he meant by under sawlog size—that under twelve-inch stump and ten-inch trunk. He never counted the trees he claimed were under size, and made no measurement or estimate of timber cut from the land. His testimony is based on his opinion from walking over the land, looking after his cattle.

Bill Haigler was the next witness, but apparently knew nothing of value in the case.

Henry Ballio, plaintiff's witness, testified that he helped cut the timber; that they cut it as near the ground as possible, but cut no trees under ten inches in diameter; that he had instructions to cut nothing under ten inches; and that they cut the trees about six inches from the ground.

W. C. Cookston testified that about 50 per cent. of the timber was suitable for sawlogs. His estimate is based upon a twelve-inch stump twenty inches high. He had not seen the tract since the timber was cut; had never been over the land, only surveyed around the outside of the tract in 1922, and had not seen it since that time.

We have reviewed the entire testimony of-

fered by plaintiff in regard to timber cut under size.

Defendant offered six witnesses who testified that no timber was cut under ten inches in diameter at the stump. The stump measurement, however, was from four to six inches from the ground. It offered several witnesses who testified that no trees were cut that would not make sawlogs. It is easy to see that the evidence as to the amount of timber, if any, under ten inches at the stump, measured sixteen inches from the ground, is vague and indefinite. There has only been an effort to guess at the amount in the stacks, without knowing where the timber came from; the stump measurement or the height of the trees are not even estimated. Common knowledge teaches us that a tree twenty-four inches at the stump and sixty feet in height will make more pulp wood than one six inches at the stump and twenty feet in height. And a tree twelve inches at the stump and thirty feet in height will make more pulpwood than one twelve inches at the stump and only twenty feet in height. Plaintiff has failed to give us the number of trees he contends were under size. He has not given us the measurement of a single stump, nor even the measurement of a single butt cut he claims he found in the stacks. He relies entirely upon the opinion of himself and Mr. Miller, formed merely from taking a look at the wood after it was stacked. Such testimony is not certain enough to form the basis of a judgment. A tree twenty inches at the stump will taper to four or five inches at the top. The record is silent on the custom and usage of lumber companies in regard to the tree tops as to how small the top cuts must be before considered unsuitable for sawlogs. Such information the court is entitled to, and it is incumbent upon the plaintiff to prove before it can secure a judgment.

Plaintiff could easily have taken the measurement of the stumps and the distance from the stump to the tree tops to find the approximate height, thereby arriving at a nearly correct estimate of the timber cut under size, if any. To render a judgment for any specific amount on the testimony adduced, even though we accept the lower court's finding of ten inches at the stump, would only be to hazard a guess, which we are not justified in doing. The plaintiff must prove his case, even as to amount due, with some degree of certainty. If we should hold that plaintiff has proved, with a sufficient degree of certainty, the amount of pulp wood taken from timber under ten inches in diameter at the stump, under our finding that defendant was justified in cutting all timber eight inches, and up, at the stump, there is no evidence to show how much of that part of the wood coming from timber under ten inches came from timber under eight inches, as plaintiff's entire testimony on this point was based on timber under ten inches at the stump.

■ Defendant has, however, admitted that it made use of the tree tops. To what amount is not shown. Plaintiff is certainly entitled to judgment in the amount of the value of the tree tops made into pulp wood. The district court, in dealing with the quantity of pulp wood taken from trees under size, had the following to say:

"The Court is faced with a great difficulty in arriving at the amount of timber that was cut from this eighty acres of plaintiff's land. The evidence shows that Mr. Haigler protested against the cutting of this small timber but that in spite of this protest, the defendant, through their representatives, persisted in cutting this timber and they made no estimate and no check and no scale of the timber that fell below the usual and ordinary size. The Court is therefore faced with the dilemma of having to accept the estimate of plaintiff as to the amount of timber cut below saw log size and will have to accept the estimate made by Mr. Haigler and Mr. Miller, when they testified that fifty per cent of the timber cut fell below the saw log size. This estimate is made necessary for this reason, if, as the Court finds, pulpwood timber has been cut, that was not sold in this deed and the Court awards the plaintiff damages for the value of this timber this Court will have to accept the testimony of plaintiff as being the only estimate or testimony in the record upon which to arrive at same for plaintiff. This Court does not feel that it should deny the plaintiff the value of his timber. It believes that under the law of this State he is entitled to recover for his timber and believes that where the defendant fails to produce the testimony it has brought upon itself the hardship, in arriving at the valuation of the timber. The defendant could have, by scaling the timber at the usual and customary heighth at the stumps for logging operations, have been in position to give the court the actual amount of timber cut below the usual ten-inch diameter, accepted in this case as the criterion and the fact that the defendant failed, this Court will be obliged to accept the estimate of plaintiff and his witnesses who have sworn as to the amount of timber used."

■ We cannot agree with the finding of the lower court. Plaintiff and his witness Miller testified that they were on the tract of land from which the timber was cut daily for a period of nearly two months for the purpose of securing evidence for this lawsuit. They were present when the trees were cut and had every opportunity to secure the necessary evidence. If they failed to do so it is no fault of defendant. Defendant is not called upon, nor is it the duty of defendant, to produce the testimony to make out plain-

tiff's case. Defendant strongly contends that it did not cut any timber under sawlog size, and to hold that it should show the amount of timber under sawlog size would be incorrect. It is the duty of plaintiff to make out his case with the preponderance of testimony and to prove the amount he prays for with some degree of certainty, and to give to the court facts upon which a judgment in some specific amount can be based. In this last respect the plaintiff has failed.

The lower court correctly found that 675.35 cords of pulp wood were cut and removed from plaintiff's land, but was in error from the testimony in finding that half of it was made from timber under size, when classed as merchantable timber for sawlogs. Since the record shows that defendant used the tree tops, which it had no right to use, the plaintiff is entitled to recover for their value, and we think he should have the opportunity to prove, if possible at this late date, what part of the pulp wood removed from the land was made from tree tops, as well as what part was made from trees not classed as merchantable under our finding in this case.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed; that the demands of the plaintiff be dismissed as of nonsuit, at his costs in both courts.