*861
 
 ROGERS, J.
 

 The plaintiffs are W. J. Dowies, Luther Dowies, and Alvie Dowies (the two last named suing by virtue of deeds to them by their father, W. J. Dowies) They allege that in April, 1906, and in March, 1912, they sold to the defendant companies, the Pickering Dumber Company and the Pickering Land & Timber Company, all of the “standing merchantable pine timber” on the lands described in their petition, granting said purchasers 20 years within which to remove the timber sold; that during the year 1920 the defendants began cutting and removing the timber, in the course of which operations they not only cut and removed the timber purchased by them, but also small pine saplings which plaintiffs did not consider “merchantable timber”; that plaintiffs immediately advised defendants of the action of their employeeSj and warned them to discontinue cutting and removing the saplings and small unmerchantable trees; that defendants disregarded the warning, and removed all dead and down timber, and all standing timber of every size and dimension, from plaintiffs’ lands; and for all such timber unlawfully removed plaintiffs ask that the defendants be made to pay.
 

 Defendants admit the sales as alleged, but deny the meaning which plaintiffs attach to the words “merchantable pine timber,” specially averring that those words, at the dates of the respective sales, meant “such timber-as was 6 inches and up'at the stump,” and they deny that any dead or down timber was removed.
 

 The court below rejected plaintiffs’ demand, and they have appealed.
 

 The first question to be inquired into and determined is the meaning of the phrase “merchantable timber,” as understood and used by those engaged in buying and selling timber in that portion of the country where plaintiffs’ land is situated at the dates of the execution of the timber deeds. The judge a quo was of the opinion, as set forth in his written reasons for judgment, that the plaintiffs had not established their case on this point by a preponderance of the evidence. This would be true if the testimony on any given issue must be decided upon the number of witnesses sworn for each of the contending parties. In the present case eight experienced lumber and timber men, two of whom are plaintiffs in the case, testified that the 'term'“merchantable timber,” in that section of the country', in the years 1905 and 1912, meant a log 16 feet long, and at least 10 inches at the butt and 8 inches at the tip. Eight experts, six bf whom were at the time, or had been previously, in the employ of the defendant companies, testified that the term meant a log 16 feet long, 6 inches in diameter at the tip, of average taper and straightness, which would make 2x(t’s. We have carefully read the testimony of all of these witnesses, and it is our conclusion, unlike that of the district judge, that the preponderance of the evidence is with the plaintiffs on the point at issue. As we appreciate the testimony of the expert witnessses for the defense, their knowledge of the subject about which they were interrogated was principally confined to the policy of their respective companies. The six employees, present and former, of the defendant companies, in particular, seemed to have been guided entirely in their evidence by the custom apparently pursued by their employers of cutting -anything that would make a 2x4 piece of lumber. On the other hand, the testimony of the expert witnesses for the plaintiffs, while also referring to the custom of particular’ mills, seems to be more general in its reference to usage and custom. We are particularly impressed witli the testimony of Mr. Sam J. lies, who was sworn in-plaintiffs’ behalf. This witness has lived in that particular section of the country for 56 years. 1-Ie is experienced in the timber and logging
 
 *863
 
 business, in which he has been engaged for 2-1 years. Mr. lies is apparently a disinterested witness. 1-Iis testimony is straightforward and to the point. He states, in answer to a question, that during the years 1906 and 1912 timber and logging people would accept as merchantable a log as low as 8 inches at the tip, where the log itself was 16 or 18 feet long, although personally he never estimated anything lower than 10 inches. The witness also shows that there was a great difference between the size of the timber the lumber companies cut in 1912 and the character of the timber they cut in 1920 and 1921. He testified that in these latter years it was customary to cut nearly all the timber on the land.
 

 We do not think there can be any serious doubt that defendants cut and'removed from plaintiffs’ lands more timber than they were entitled to take under their contracts. The testimony shows, conclusively, that they have taken practically all the timber, large and small, leaving only a few pine saplings.. They .are therefore liable in damages to plaintiffs for the timber which they have wrongfully taken from them.
 

 The evidence of Mr. Garrett, the superintendent of the Pickering Land & Timber Company, shows that, including large and small timber, 2,893,412 feet of good lumber was obtained from plaintiffs’ tract of land. The testimony of Mr. Perkins and of Mr. Henderson, which is uncontradicted, fairly establishes, we think, that the defendant companies obtained 200,000 feet of lumber from trees or logs measuring less than 8 inches in diameter at the tip. The evidence shows that the stumpage value of this timber at the time it was cut and removed was $5 per thousand feet. Plaintiffs áre therefore entitled to a judgment against defendants for $1,000, divided, according to their respective interests, as follows, viz. W. J. Dowies, $899.55; Luther Dowies, $54.95; and Alvie Dowies, $46.50.
 

 For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that there be judgment against the defendants, the W. R. Pickering Lumber Company and the Pickering Land & Timber Company, in solido, in favor of W. J. Dowies' for $899.55; in favor of Luther Dowies for $54.-95; and in favor of Alvie Dowies for $45.50, with legal interest thereon from judicial demand, defendants and appellees to pay all costs of this suit.