ODOM, Justice.
 

 On September 10, 1901, Samuel C. Tippet sold to F. E., A. M., and W. B. Gloyd “all the timber standing, being and
 
 *636
 
 growing on and upon” 80 acres of land in Vernon Parish for $300 cash, the vendees to have 50 years from that date in which to remove the timber.
 

 On March 13, 1902, Tippet sold the land to Joel E. Cooley, “with all pine Timber reserved and excepted and withheld from said Joel E. Cooley”.
 

 The plaintiffs in this suit are the widow and sole heirs of Joel E. Cooley. The defendant is the. Meridian Lumber Company, Ltd., to which the timber passed from the Gloyds by mesne conveyances.
 

 Plaintiffs allege that they are the owners of the land and set out their chain of title, which consists only of a patent from the United States to Samuel C. Tippet and the deed from Tippet to Joel E. Cooley conveying the land itself, “with all pine Timber reserved and excepted and withheld from said Joel E. Cooley”. Plaintiffs allege that the term of 50 years named in the deed for the removal of the timber from the land “is unreasonable and in effect amounts to a confiscation of their property,' depriving them of the use thereof”; that none of the timber has been cut and removed from the land, and that from the date of the timber deed in 1901 to the date of the filing of the suit on November 21, 1938, “new and distinct crop of timber has grown and developed into merchantable pine timber that was not in existence, or even contemplated, or conveyed by the above named timber deed. * * * and that the present owners of the timber sold on Sept. 10th 1901 are now claiming the ownership of all the merchantable timber standing and growing upon said tract of land”, including the small trees on the land at the time of the sale which were not then suitable for lumber but which have grown to be of merchantable size since that time, and the trees which were not then in existence but which have grown up on the land since that time.
 

 They further allege that the timber deed referred to “had reference to, and conveyed, only such timber as was merchantable at that time, and for which there was a market at that time”; and-that plaintiffs are now the owners of all the timber on the land, except that which, was merchantable at the time the timber deed was made in 1901; that they own the timber which was on the land in 1901 but which was then less than 10 inches in diameter at 'the stump, as well as all timber now on the land which was not in existence at the time the timber deed was made. And they pray for judgment so decreeing. ,
 

 In a supplemental petition, plaintiffs, allege that the modern method of removing timber from land is to use what is called a “steam skidder”, which destroys-all small timber growing on the land, and they pray that defendant be enjoined from the use of such machinery for the removal of the timber from their land.
 

 Defendant excepted to plaintiffs’ petition on the ground that it set out no-cause or right of action. This exception is based on the ground that, when Joel E. Cooley purchased the land from Tippet in 1902, there was excepted from the deed all the - pine timber, for which rea
 
 *638
 
 son plaintiffs have no interest in the timber which they now claim, even if it be conceded that defendant is not the owner of it, because their ancestor acquired no right whatever to the timber but acquired the land in naked ownership only. This exception was referred to the merits and finally overruled.
 

 Defendant also pleaded estoppel, this plea being based upon the ground that, in 1929, Joel E. Cooley sold to H. E. Moore five acres of this land, the deed containing the following clause: “All timber being sold previous to the execution of this deed”.
 

 Defendant in its answer admitted that it is “claiming ownership to all of the timber standing, being and growing on the property described in Article 3 of the petition”. It especially denied that plaintiffs are the owners of any of the timber on the land, and asserted that it owns all of the timber now on the land of whatever size, character, and description, including that which was not in existence in 1901 when the timber deed was executed..
 

 There was judgment in favor of plaintiffs and against defendant, overruling the exception of no cause or right of action and the plea of estoppel, and recognizing plaintiffs as the owners- of “all the old field pine of every size and dimension now being upon” the said land and as the owners “of all timber of every kind under ten (10) inches in diameter now being and growing upon said land”, and decreeing “that all timber not of the ‘short leaf’ otherwise known as
 
 ‘old field pine’,
 
 that is now ten (10) .inches in diameter, or over,” is the property of the defendant.
 

 From this judgment both sides appealed.
 

 The defendant is entitled now to all of the property, rights, and privileges conveyed by Samuel C. Tippet and his wife to the Gloyds by the timber deed dated September 10, 1901. That deed, which was executed about 37 years before this suit was filed, conveyed “all the timber standing, being and growing on” the land then owned in fee by Tippet, “with the right to take and remove said timber off and from said land at. any time within a period Of 50 years from the date of this instrument”. Defendant traces its title to the timber through mesne conveyances to the Gloyds. Each of the conveyances from the first one to the last contains the same description of the timber conveyed and the same period of time for the removal thereof from the land. Neither the defendant nor any of its predecessors has ever exercised any of the rights and privileges granted.
 

 The major point presented for our consideration and decision arises out of a controversy between plaintiffs and the defendant as to what defendant now owns under the original grant and those made under and pursuant thereto, and what its rights and privileges now are. Plaintiffs’ contention is that the deed from Tippet to the Gloyds conveyed only such timber as could be manufactured into lumber at that time; and that defendant does not now own, and is not entitled to remove, any of the trees on the land at the time of the original grant which were then too small to be manufactured into lumber but which have since grown to a size suitable for that purpose, or any of the trees which are now
 
 *640
 
 ■on the land hut which were not in existence at the time of the original grant. In other words, plaintiffs contend that the estate conveyed by Tippet to the Gloyds consisted only of the trees then on the land which were suitable for manufacture into lumber, and that defendant does not get the benefit of the growth of any of the trees except those intended to be conveyed, and is not entitled to the growth of the small trees which were then under size and the trees which have since grown up on the land.
 

 Defendant on the contrary claims the ownership of, and the right to remove, all the trees presently on the land, of whatever size, character, or description.
 

 Taking up first the question as to what the Gloyds acquired from Tippet under the timber deed, we note that the original deed and those which follow it mention “timber” but say nothing about “trees”. The grant by its terms includes “all the timber standing, being and growing on” the land. Ordinarily, timber deeds are more specific than these as to description. Usually such deeds convey the “merchantable timber”, “timber suitable for sawmills”, “timber suitable for manufacturing purposes”, or trees of certain kinds with size or dimensions given. But there is nothing in these deeds which throws any light upon what is meant by the language “all timber standing, being and growing on” the land.
 

 The cardinal rule for the interpretation of contracts is that courts must seek for, and ascertain, the mutual intention of the parties, if that is possible. This, in substance, is the rule laid down in Article 1945 of the Revised Civil Code, and Article 1946 of the Code says that “The words of a contract are to be understood, like those of a law, in the [their] common and usual signification, without attending so much to grammatical rules, as to general and popular use”.
 

 Following this rule, in order to determine what the contracting parties themselves understood to be the meaning of the word “timber” as used in the contract, we must give consideration to the surrounding circumstances existing at the time the contract was made, the use then made ordinarily of trees severed from the land under a timber grant, the industrial enterprises then existing in the particular section which, by the use of timber, created a market for it, and the meaning and signification which the word “timber” had at that time.
 

 The testimony shows that in 1901, the date of the original timber grant, the only industrial enterprises operating in the section of the state where this land was located were sawmills which manufactured timber into lumber. The only testimony in the record directly touching the point shows that there was then no market for small trees, poles, or saplings. There was a limited demand for trees suitable for the making of crossties, but none for small timber. It is common knowledge that small pine trees are now being extensively used in some sections of this state for the making of paper pulp, and common knowledge also that there were no pulp or paper mills in this state at that time.
 

 
 *642
 
 Certain witnesses called by defendant stated that, when timber was purchased at that time without specification as to size, the purchaser removed all trees that he could use, but they did not say that there was any general use or market for timber other than for sawmill purposes and the making of crossties. Witnesses for plaintiff testified that sawmills usually cut and used trees measuring in size from 8 to 12 inches in diameter, and up, at the stump. From the testimony adduced, our conclusion is that the parties to this contract had in mind such trees only as were suitable for the manufacture of lumber, and we conclude further that the parties probably had in mind all trees measuring 10 inches and up in diameter at the stump.
 

 There is nothing in the deed itself, and the witnesses said nothing, as to whether the Gloyds, who purchased the timber from Tippet, were engaged in the sawmill business. But there are deeds in the record showing that on February 2, 1905, they sold “all of the timber standing, being and growing on and upon” this and other lands to the Gulf Land and Lumber Company, a Missouri corporation; and that on April 24, 1907, the Gulf Land and Lumber Company sold the same property to the Gulf Lumber Company, a Louisiana corporation. The fact that the timber soon passed into the hands of lumber companies indicates that the Gloyds purchased the timber for sawmill purposes. The Gloyds reserved no interest in the timber, but sold what they had purchased to the lumber companies.
 

 The general rule is that, where the word “timber” is used in a grant without qualifications or without specifications as to size, it means such trees as are suitable for the manufacture of lumber to be used for building and allied purposes. Courts generally have placed such interpretation upon the word “timber”. In Lampton Realty Co. v. Kerr, 154 La. 843, 98 So. 266, 268, the court said that the case involved the proper interpretation to be placed on '.a deed which conveyed “all the pine timber” on a large tract of land. As to the meaning of the word “timber” as used in that contract, we said:
 

 “While the question is res nova in this state, the interpretation we have placed on the word ‘timber’ as used in the contract is in perfect accord with the text-writers and the adjudications of many of the othér states.
 

 “Thus the term ‘timber’ has been generally defined to mean that sort of wood which is proper and suitable to be used for the construction of buildings, tools, utensils, furniture, fences, ships, and the like. The word ‘timber’ is also used to signify standing trees suitable for the construction of dwelling houses, ships, and the like. See note to Balderson v. Seeley [160 Mich. 186, 125 N.W. 37, 136 Am.St.Rep. 428], 19 Ann.Cas. page 1049. Timber, in its primary meaning, 'as given by Webster, is that sort of wood which is proper for buildings, etc.
 

 “In Lord v. Meader, 73 N.H. 185, 60 A. 434, it was said that in this country the term ‘timber,’ when applied to standing trees, generally means such as are suitable for use in the erection of buildings, or in the manufacture of tools, utensils, furni
 
 *644
 
 ture, carriages, fences, ships, and the like. The word does not denote trees which are suitable only for firewood or cordwood. And cross-ties are not timber when hewn and ready for use within the meaning of a grant of timber to be removed in a certain specified time, as held in Johnson v. Truitt, 122 Ga. 327, 50 S.E. 135; Butler v. McPherson, 95 Miss. 635, 49 So. 257.
 

 “It has been held that a deed reserving all pine and hemlock timber, and specifying no time of removal, reserves only timber then having a market value and suitable for use, that is large enough for use as timber, and not such as may thereafter become large enough. Huron Land Co. v. Davison, 131 Mich. 86, 90 N.W. 1034.
 

 “The rule recited in 17 Ruling Case Law, p. 1094, is that, where there is nothing to indicate that the contract was made with reference to any construction of the word ‘timber’ peculiar to the locality, and the parties appear to have used the term in its ordinary meaning, it is generally held that firewood is not included; nor does the reservation in a grant of real estate of the timber growing upon the property include1 saplings and undergrowth which at the '.time of the grant are not of a size suitable to make lumber.
 

 “Many more authorities might be cited to the same effect, but we deem it unnecessary to do so. To our minds it seems ■pérfectly clear that the word ‘timber,’ in its ordinary, everyday use, when applied to standing trees, means such trees only as are- suitable to be made into marketable •and; commercial, lumber, and. that-, is -the sense in which the word was used in the sale in question.”
 

 See Dowies et al. v. W. R. Pickering Lumber Co. et al., 159 La. 860, 106 So. 331.
 

 In each of the following cases, it was held that the word “timber”, when applied to standing trees, means ordinarily such-trees as are of sufficient size to be manufactured into lumber. Nettles et al. v. Lichtman et al., 228 Ala. 52, 152 So. 450, 91 A.L.R. 1455; Balderson v. Seeley (cited in Lampton Realty Co. v. Kerr, supra), 160 Mich. 186, 125 N.W. 37, 136 Am.St. Rep. 428, 19 Ann.Cas. 1049; Kaul v. Weed, 203 Pa. 586, 53 A. 489; Vandiver v. Byrd-Matthews Lumber Co., 146 Ga. 113, 90 S.E. 960; Colleton Mercantile & Mfg. Co. v. Gruber, D.C., 7 F.2d 689; Zimmerman Mfg. Co. v. Wilson, 202 Ala. 340, 80 So. 422; Hicks v. Phillips, 146 Ky. 305, 142 S.W. 394, 47 L.R.A.,N.S., 878.
 

 These cases all relate to the question of size and kind of trees contemplated in timber contracts where the property conveyed is “timber” without specification as to- size and kind. In the case of Hicks v. Phillips, supra, the Supreme Court of Kentucky held that “saplings and undergrowth which, at the time of the grant, are not of a size suitable to make lumber” were not included in a reservation of timber growing on the land sold. The other cases cited above are in accord with the Hicks case.
 

 In the case presently before us, we have no doubt that the use for which the trees were intended was the manufacture of lumber, and we hold, -therefore,’ that the grant ■ -included-’ only such timber or trees
 
 *646
 
 as were suitable for that purpose, and that the grantees became the owners of only such trees.
 

 The other, and perhaps the most important, question involved is whether the defendant now owns, and is entitled to remove, the small trees growing on the land in 1901 not then suitable for sawmill purposes but which have since grown to saw-log size, as well as the trees not then in existence but which have grown up on the land since the grant was made.
 

 Act No. 188 of 1904 provides that “standing timber shall remain an immovable, and be subject to all the laws of the State on the subject of immovables, even when separated in ownership from the land on which it stands”. In the case of Smith v. Huie-Hodge Lumber Co., 123 La. 959, 49 So. 655, 656, this court held that under that act, taken in connection with pre-existing law, the sale of standing-timber, though made with the view of its separation from the land, is the sale of an immovable.
 

 It was there contended by counsel for the lumber company that the timber contract there involved, by which the owner of the land “granted * * * ' unto the party of, the second part all the merchantable pine timber on the above described land, with the exclusive right to build * * * tram roads for the purpose of removing said timber”, was “merely a license tb- enter upon the land and cut the merchantable pine timber thereon; no time within which the cutting should be done being specified”. Since that was a suit to set aside the sale of the timber for lesion beyond moiety, it was necessary for the court to decide whether real estate was conveyed by the grant or whether, as contended by counsel, the alleged sale was merely a license to enter upon the land for the purpose of cutting and removing timber, because, according to Article 2594 of the Civil Code, “Rescission for lesion beyond moiety is not granted against sales of movables and produce”.
 

 The court there said, among other things:
 

 “We find nothing in our law or jurisprudence which would justify us in holding that the instrument thus quoted does not evidence a contract of sale.”
 

 The court in commenting said that this was a case where the owner “gives a thing for a price in money”, and “the other gives the price in order to have the thing itself”. The court stated that the “thing” was the whole of the timber and that the contract evidenced a “sale”. “Contracts for the sale of standing timber,” said the court, "with varying stipulations as to price and as to the time in which the timber should be removed, have more than once been held by this court to be sales”; citing numerous cases.
 

 This case was cited with approval and followed in the case of Hyde v. Barron, 125 La. 227, 51 So. 126. These cases specifically hold that a grant of the timber on land, with the right of the vendee to enter upon the land for the purpose • of removing the timber, is a sale of real estate and in no sense a license granted for the purpose of removing timber from land.
 

 In the case of Brown v. Hodge-Hunt Lumber Co., 162 La. 635, 110 So. 886, the
 
 *648
 
 court held that a sale of land with reservation of the timber is “clearly a segregation of ownership of the timber from the land” and creates “two separate and distinct estates” — one of the land and the other of the timber. The court said' that this principle was too well settled to need citation of authorities.
 

 In Gray v. Edgar Lumber Co., 138 La. 906, 70 So. 877, it was held that “a sale of standing timber creates ,a separate estate in the timber, as an immovable, and segregates the timber from the land on which it is growing” (Paragraph 1, Syllabus). See, also, Simmons v. Tremont Lumber Co., 144 La. 719, 81 So. 263, and the numerous cases there cited, and Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275.
 

 When we apply the rule or principle announced in the above-cited cases to the one now before us, ii is clear that, when Tippet sold the timber to the Gloyds in 1901, he created a separate estate consisting of the timber on his land. After the sale to the Gloyds, there were two estates, one consisting of the land and the other of the timber. Thereafter, the ownership of these estates was entirely separate and. distinct. The Gloyds’ estate, which consisted of the timber, was vested in them by an instrument which evidenced a sale. That instrument in no sense evidenced a mere license to enter upon the land for the purpose of removing the timber. The instrument was an outright sale of a thing — the timber. The deed recites that the vendor does bargain, grant, sell, and “deliver” to the purchaser all of the timber standing, being and growing on the land.
 

 The Gloyds owned only the timber included in the sale which was the timber or trees suitable at that time for the manufacture of lumber. They owned nothing more then, and the defendant owns nothing more now. Under the terms of their deed, they could have entered immediately upon the land for the purpose of removing their estate, the timber which they owned. But they could not legally have removed what they did not own. Since the fifty-year period granted for the removal of the timber has not yet expired, defendant may now, or at any time up to the end of the fifty-year period, enter upon the land for the purpose of removing the timber which it owns.
 

 This court held in Simmons v. Tremont Lumber Co., 144 La. 719, 81 So. 263, and again in Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275, that the sale of standing timber separate from the land does not have the effect of creating a servitude on the land, but instead creates two separate estates, one of the land and the other of the timber.
 

 No sound legal reason has been suggested, and we can think of none, to support defendant’s theory that it now owns the timber which it did not purchase and pay for. To hold that defendant now owns the trees on the land which were but saplings and too small for ordinary use in 1901, when the sale was made, but have since grown to merchantable size, and that it owns the old-field timber which was not even in existence when the sale was made but
 
 *650
 
 which has grown up since, would be to hold, in effect at least, not only that Tippet sold certain timber to the Gloyds with right to remove it at any time within 50 years, but that he also delivered his land to them for the production of timber during that entire period; that a sale of timber with a term of years for removal thereof amounts, in practice at’ least, to a lease or a grant in favor of the vendee of the use of the soil for the production of timber during that time. Such, was never contemplated by the parties. The vendor gave the vendees’ access to his -land for the sole purpose, according to the language of the contract, of removing therefrom the estate which he had conveyed.
 

 ■ To sustain defendant’s contention on this branch of the case would be contrary to the settled jurisprudence to the effect that timber contracts of this kind are outright sales, and to the settled rule that under contracts of this kind the purchaser of the timber may exercise his right of removal at any time within the period granted but that, after he has exercised his right by removing the timber which he purchased, he cannot thereafter enter upon the land for the purpose of removing timber. Taylor v. Southland Lumber Co., 162 La. 535, 110 Ga. 746; American Creosote Works, Inc., v. Campbell, 172 La. 866, 135 So. 659.
 

 If, as contended by counsel for defendant, a purchaser of timber under contracts like the one before us is entitled to remove the timber which is produced by the soil during the period granted for the removal of the timber sold, there is no reason why he should not be permitted to continue to remove timber from the land during that entire period, even though he had in the beginning removed the timber which he actually purchased. Yet he is prohibited from doing this under repeated decisions of this court.
 

 The view held by courts generally is that contracts of this kind authorize the removal of only such trees as were suitable for timber at the date of the instrument. In Neal Lumber & Mfg. Co. v. O’Neal, 1932, 175 Ga. 883, 166 S.E. 647, 648, the contract conveyed “all of the trees and timber of every kind and description growing or being” on the land, and gave to the purchaser about 30 years in which to remove it. A subsequent agreement was entered into, which was referred to as a lease, which extended the time for the removal of the timber, and that instrument, like the first, referred to all the timber of every character and description being and growing on the land. The defendant contended in that case that “the lease conveyed all of the trees which then stood upon the land and which would grow and become timber during the life of the contract, regardless of whether they were useful as timber at the execution of the instrument”. The court rejected that theory, saying in the course of its opinion:
 

 “Time was not all that the purchaser got by the long duration of the lease. The additional growth of the timber inured to his benefit and was a material inducement. Accordingly, it is not unreasonable to say that the lease would not take in other trees as time passed.”
 

 
 *652
 
 The following extract from the opinion is interesting and is applicable to the case at bar:
 

 “The long duration of the grant made by Mrs. Alday may tend in some degree to indicate an intention to convey such trees as could be used as timber at any time during the life of the contract; but under the terms of the lease the right to cut and remove the trees immediately was not restricted, and the vendee could have entered at once and commenced his operations. If he had done so, is there any doubt that he would have been confined to the removal of such trees as were then fit for use as timber? In demanding and receiving an easement of immediate entry, the grantee manifested a purpose to purchase the trees as timber. It is therefore clear that the lease was intended by the parties to operate only upon such trees as would be suitable for this purpose at the time the lease was executed.”
 

 In Robertson, State Revenue Agent, v. H. Weston Lumber Co., 124 Miss. 606, 87 So. 120, 124, the Supreme Court of Mississippi, in passing on a question whether the purchaser of timber with a term of years for its removal was entitled to the benefit of the growth of timber not included in the contract, said: .
 

 “The great weight of authority supports the doctrine that a provision in a timber deed as to the size, suitability, or merchantability refers to the time of the conveyance and not to the time of the cutting and removal of ’ the timber. A deed to timber becomes effective on its being signed and delivered, and in the absence of provisions to the contrary will not include such timber as grows subsequently so as to come within the meaning of the term as of the time of the cutting rather than the date of the conveyance.”
 

 This language was quoted with approval in the more recent case of Armstrong v. Jones, decided November 16, 1936, by the Supreme Court of Mississippi, reported in 177 Miss. 359, 170 So. 637.
 

 The following text is found in 17 R.C.L., Section 21, page 1094:
 

 “It is generally held that a provision as to the size or suitability of the timber refers to the time when the contract or grant was made, in the absence of anything to show a contrary intent. Thus where a vendor, in reserving to himself the timber growing upon certain lands, retained the title to all of the trees standing thereon that were then of a size suitable to make lumber, it was held that any saplings or undergrowth then growing upon the land that were not of a size suitable to make lumber, or that have since grown, were not reserved, and passed under the conveyance to the vendee.”
 

 See Wilson Lumber Co. v. D. W. Alderman & Sons Co., 80 S.C. 106, 61 S.E. 217, 128 Am.St.Rep. 865; notes: 128 Am.St.Rep. 872; 55 L.R.A. 525, 526; Hicks v. Phillips, 146 Ky. 305, 142 S.W. 394, 47 L.R.A.,N.S., 878. See also, to the same effect, Miller-Brent Lumber Co. v. Dillard, 201 Ala. 18, 75 So. 308.
 

 Counsel for defendant lay stress on the following extract' from this court’s opinion in' the case of Lampton Realty Co. v.
 
 *654
 
 Kerr, supra, from which we have already quoted:
 

 “He had 20 years within which to cut and remove the timber, and all trees which from ' growth became suitable to be manufactured ■ during that period were included in the pur- ' chase.”
 

 That statement was not pertinent to the issue involved in that case, which was whether a deed which conveyed “all the pine timber” on a body of land included saplings, tree-tops,. etc., not suitable for manufacture at the time the deed was made. The court held that it did not. That was the only issue involved in that case, so that the expression relied upon by counsel was obiter. Not only that, the view so expressed is contrary to the general rule and contrary to some of the authorities which the court there cited. The court said, in the course of its opinion:
 

 “It has been held that a deed reserving all pine and hemlock timber, and specifying no time of removal, reserves only timber then having a market value and suitable for use, that is large enough for use as timber,
 
 and not such as may thereafter become large enough.”
 
 (Citing Huron Land Co. v. Davison, 131 Mich. 86, 90 N.W. 1034.) (Italics ours.)
 

 The court also cited 17 R.GL., page 1094, from which we have quoted above certain extracts.
 

 In the case of American Creosote Works v. Campbell, supra [172 La. 866, 13S So. 660], we said, in-explaining the meaning of the clause in :a timber contract giving the vendee, a certain periqd within which to remove, timber:
 

 “What that clause means is that the vendee had the right to go upon the land at any time within the ten-year period for the purpose of removing the timber which it purchased; that is, the timber which was merchantable on the date of the purchase.”
 

 As to the exception of no cause or right of action, we approve the ruling of the court overruling it. The exception was based on the ground that in the deed from Tippet to Cooley there was excepted all the' pine timber, and that therefore these plaintiffs have no right to any of the timber which they now claim, even though it is not owned by defendant. This exception is disposed of, in effect, by our holding that the deed from Tippet to the Gloyds included only timber then suitable for sawmill purposes. W.e construe the reservation in Tippet’s deed to Cooley to mean the same kind of timber.
 

 Plaintiffs sought to enjoin the defendant from using a steam skidder to remove the timber. We agree with the trial judge that such action is premature because the defendant was not engaged in the removal of the timber at the time the suit was filed, and, when it is removed, the defendant may not use a steam skidder for that purpose. If it does . and • plaintiffs’ small trees are damaged by. the use of it, plaintiffs may then institute such proceedings as are allowed by law to protect their interests.
 

 We think the defendant now owns, and is therefore entitled to remove at any
 
 *656
 
 time up to the end of the fifty-year period, all the timber which was, at the time of the grant in 1901, 10 inches and up in diameter 24 inches above the ground.
 

 Mr. Frederic LeMieux, Jr., an expert timber estimator and for many years engaged in the practice of forestry engineering, testified that, by the use of an “increment borer” to extract cores from the trees, the growth for the past 37 years could be ascertained by counting the annual rings from the bark toward the center, and that by this method the size of a tree in 1901 could be determined. By this method he had estimated the number of trees on the land in 1901 which were then 10 inches in diameter. Plaintiffs’ expert, by using a different method, reached practically the same conclusion as did Mr. LeMieux as to the number of trees.
 

 The judgment appealed from, in so far as it relates to the ownership of the timber, is written in three paragraphs. The first paragraph decrees that plaintiffs own all of the old-field timber of every size and dimension now on the land. The second paragraph decrees plaintiffs to be the owners of all timber of every kind under 10 inches in diameter now being and growing upon the land, and the third decrees defendant to be the owner of all timber, not of the short-leaf variety or old-field pine, which is now 10 inches and up in diameter.
 

 For the reasons assigned, the judgment, in so far as the second and third paragraphs are concerned, is amended and recast so as to read as follows: It is adjudged and decreed that plaintiffs are the owners of all timber now on the land which was under 10 inches in diameter when the original timber sale was made in 1901, and further decreed that defendant js now the owner of, and entitled to remove, only such trees as were, on the date of the sale, 10 inches and up in diameter 24 inches above the ground. The judgment is affirmed in all other respects; defendant to pay costs.
 

 O’NIELL, C. J., dissents, and hands down reasons.