527 So.2d 534 (1988)
CONTRABAND COVE, A Limited Partnership, Plaintiff-Appellee,
v.
James E. DALY, Defendant-Appellant.
No. 87-315.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
Scofield, Bergstedt, Gerard, Mount & Veron, P.C., Gregory J. Klumpp, Lake Charles, for plaintiff-appellee.
Leithead, Scott, Boudreau, Myrick & Richard, Randall E. Roach, Lake Charles, for defendant-appellant.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, Contraband Cove, A Limited Partnership, (hereafter the Partnership) filed this suit against James E. Daly seeking to recover certain capital contributions allegedly owed by Daly to the Partnership. The trial court concluded that defendant was obligated to make the contributions as provided in the written partnership agreement and rendered judgment against defendant ordering him to pay the partnership $9,400.00 in delinquent contributions together with interest until paid. Defendant suspensively appealed.
On July 30, 1984, James E. Daly, Edward W. Nelson and Thomas M. Bergstedt entered *535 into an Agreement of Limited Partnership of Contraband Cove. The Partnership was formed for the purpose of acquiring, developing and operating approximately 15.15 acres of real estate located in Lake Charles, Louisiana. James Daly was an organizer of the Partnership and also served as one of the general partners until his resignation as a general partner on February 27, 1986. Following his resignation, Daly was relegated to the status of a limited partner pursuant to the provisions of the partnership agreement.
Upon formation of the Partnership, Daly subscribed to one partnership unit for which he agreed to contribute $47,100.00 in scheduled payments to the Partnership. It was stipulated at trial that Daly failed to make the scheduled contributions due the Partnership on March 1, 1985, in the amount of $3,800.00, December 15, 1985, in the amount of $2,250.00, and on March 1, 1986 in the amount of $3,350.00.
The principal issue at trial and on appeal is whether Article VI, Section 6.4 of the partnership agreement provides the exclusive remedy against a subscriber partner who fails to make any installment of his capital contributions as agreed.
Article VI, Section 6.2 of the partnership agreement sets forth the payment schedule for capital contributions of partners (general or limited) as follows:
"6.2 Capital Contributions of Partners. Each Partner shall contribute to the Partnership $47,100 per Unit subscribed in accordance with the following schedule:

Subscription Date $ 8,150
December 15, 1984 1,850
March 1, 1985 3,800
December 15, 1985 2,250
March 1, 1986 3,350
December 15, 1986 2,200
February 1, 1987 23,200
March 1, 1988 2,300
 ________
 $ 47,100"

Article VI, Section 6.4 entitled "Failure to Make Required Contributions", provides as follows:
"6.4 Failure to Make Required Contributions. In the event a Partner fails to make any installment of his capital contribution in accordance with 6.2 or fails to make additional contributions in accordance with 6.3 (`Defaulting Partner'), the non-defaulting Partners shall each have the right to contribute to the Partnership his pro-rata portion (in the ratio that his Partnership Units bears to the Units of all Partners electing to so contribute) of the amount in default and the Partnership Unit(s) of the Defaulting Limited Partner shall be reallocated proratably to such Partners.
To accomplish the foregoing, the General Partners shall give notice of such default, such notice to include a schedule indicating each Partner's pro-rata share if all accept. A Partner desiring to make such contribution shall give notice of acceptance within fifteen (15) days from the date of such notice, accompanied by a check in the amount set forth in the schedule. The notice of acceptance shall also indicate whether such Partner desires to purchase more than his pro-rata share if less than all Partners accept, in which event such Partner shall pay (or provide) the additional amount within five (5) days from notice from the General Partners.
In the event the default is not cured by such other Partners, the General Partners shall have the right to admit (without the consent of the Limited Partners) additional Limited Partners who upon contribution to the Partnership of an amount equal to the amount in default shall be allocated the Partnership Interest of the Defaulting Limited Partner. The General Partners shall not be required to advance the amounts necessary to make up any deficiency caused by the default of any Partner.
In connection with such reallocation, each Partner agrees to execute such other documents and take such other action as the General Partners may reasonably request to carry out the intent hereof. A Defaulting Partner shall have no further rights in the Partnership, voting or otherwise, except the Defaulting Partner shall be entitled to the distributions provided in Section 11.3(c) and Section 15.2."
*536 On appeal, defendant urges that he incurred no personal liability for the payments due because Article VI, Section 6.4 of the agreement provides the Partnership's exclusive remedy when a partner defaults in the payment of his capital contributions subscribed in accordance with Article VI, Section 6.2 of the agreement. In response, plaintiff urges that defendant did incur personal responsibility for payment for one unit, i.e., $47,100.00. In support of its contention, the Partnership relies on La.C.C. art. 2808. Further, the Partnership urges that Article VI, Section 6.4 does not state or imply that the remedy provided therein is exclusive or was intended to supersede the provisions of La.C.C. art. 2808. We affirm.
La.C.C. art. 2808 states: "Each partner owes the partnership all that he has agreed to contribute to it".
La.C.C. art. 2802 provides:
"The contract of partnership is governed by the provisions in the Title: Of Conventional Obligations, in all matters that are not otherwise provided for by this Title"
The partnership agreement forms the law between the parties. La.C.C. art. 1983.
With reference to the interpretation of contracts, this court stated in Kalmn, Inc. v. Walker Louisiana Properties, 488 So.2d 340 (La.App. 3rd Cir.1986), at page 343:
"Courts are bound to give legal effect to all contracts according to the true intent of the parties to be determined by the words of the contract. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent. La.C.C., Article 2046 (former Article 1945); Rebstock v. Birthright Oil and Gas Company, 406 So.2d 636 ([La.App.] 1 Cir.1981, writ denied) 407 So.2d 742 (La.1981). All clauses of agreements are interpreted one by the other to give each the sense that results from the entire act. La.C.C. Article 2050 (former Article 1955); Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). The aim of the interpretation is to discern a compatible meaning to all provisions of an agreement. Farrell v. Hodges Stockyards, Inc., 343 So. 2d 1364 (La.1977). The Court will avoid neutralizing any provisions; if possible, practical effect will be given to all its parts according to each the sense that results from the entire agreement Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). La.C.C. Art 2045 (Former Article 1950) directs the Court to ascertain the common intent of the parties when there is anything doubtful in the agreement. Henry v. Ballard and Cordell Corporation, 418 So.2d 1334 (La.1982). In ascertaining the intention, when it cannot be discerned from the contract as a whole, the Court may inquire into the circumstances surrounding the parties at the time of contracting. Henry, supra; Cooley v. Meridian Lumber Company, 195 La. 631, 197 So. 255 (1940). A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.C.C. Art 2053 (former Article 1953)."
The object of the parties was to form a partnership for the purpose of acquiring, developing and operating several pieces of prime real estate located in Lake Charles. The capital necessary to acquire and develop such properties was to be realized from capital contributions from the sale of partnership units. Although defendant testified that he interpreted the partnership agreement in conjunction with the accompanying private offering memorandum[1] as allowing him to simply "walk away" without further obligation in the event he defaulted in the payment of his subscribed contribution, a careful reading of the entire partnership agreement belies such an interpretation.
*537 Article VI Section 6.2 states that each partner shall contribute to the Partnership $47,100.00 per unit. Daly subscribed for one unit. The word "shall" in a statute or ordinance denotes a mandatory duty. La. R.S. 1:3. The word "shall" in the partnership agreement should be given the same connotation, thus creating a mandatory obligation on the part of the subscriber to contribute the $47,100.00 in accord with the schedule, except as otherwise specifically provided in the agreement. The partnership agreement does not specifically provide otherwise. As we interpret the partnership agreement, Section 6.4 merely grants the general partner and the non-defaulting partners the right or option to cure defaults by other partners in the manner set forth therein. In our view, the provisions of Section 6.4 do not relieve a subscriber of the obligation assumed under Section 6.2 unless the general partners and/or non-defaulting partners elect to exercise the options therein granted and the default is cured. To interpret the agreement as suggested by defendant, i.e., Section 6.4 provides the exclusive remedy in the event a partner defaults in his obligation under Section 6.2, negates the logical intention of the parties by either rendering each non-defaulting partner a surety for defaulting partners or saddles each general partner with the burden of finding a third party or parties to assume the defaulting party's obligation for his capital contribution. Other language in the agreement, common sense and prudent business practice, clearly indicates that such was not the intention of the parties. Section 6.4 specifically provides that general partners shall not be required to advance the amounts necessary to make up any deficiency caused by the default of a partner. Further, Section 6.5 states that, "[e]xcept as specifically provided in this agreement, or by law, no Partner shall have the right to withdraw or reduce his contribution to the capital of the partnership". (Emphasis ours).
In sum, we conclude that defendant's obligation to contribute the sum of $47,100.00 to the Partnership in accordance with the schedule set forth in Section 6.2 of the agreement is enforceable under the terms of the agreement and pursuant to the provisions of La.C.C. art. 2808.[2] Accordingly, the judgment of the trial court will be affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] This memorandum contained a summary of the material terms of the partnership agreement and thrice alluded to the fact that partners (general and limited) failing to make contributions in accordance with the agreement shall forfeit all rights as a partner of the Partnership.
[2] See also La.C.C. arts. 2836 and 2840.