11 CARAWAY, Judge,
dissenting.
I respectfully dissent from the majority’s opinion.
Just because it is harsh to employ the forfeiture penalty of this contract, does not justify a court’s resort to equity. Martin contracted to optionally maintain its rights in this timber and neglected to exercise its last optional payment. Martin could elect to pay and defer the harvest, but was not obligated to pay or ever harvest. Failing to recognize that distinction, the majority’s employment of La. C.C: art.2013’s “doctrine” for the judicial control of the dissolution of a breached lease is improper. The law between the parties arid the law of this state regarding timber sales does not allow a resort to equity.
Martin itself recognized the distinction between an optional rental and an obligatory rental and attempted to contract around the forfeiture which has now resulted. The harsh penalty was acknowledged in 1982 by Martin’s representative, Mr.. Weiger, in a letter to Pegues when he sought a modification to the proposed fifteen-year extension of the 1972 Agreement, as follows:
Regarding the installment method, a contract clause is necessary to assign some responsibility with the lessor, whereby the lessor is obligated to document any dissatisfaction and possible payment delinquencies by registered mail, with a set several day period for response or payment by Lessee.
Nevertheless, with the 1972 Agreement not having contained such a provision, Weiger’s proposal was not accepted by Pegues. The majority has now supplied what Martin did not contractually obtain.
Disregarding the parties’ negotiations concerning this issue, the majority’s decision attempts to force this somewhat hybrid contract primarily into the mold of lease so that the so-called doctrine for the judicial control of leases can be equitably administered. The decision glosses over the significant sale aspects of [2the contract, the jurisprudential rule of property law regarding the failure of a timber vendee to timely harvest the timber, and the conditional or optional term given to Martin for the maintenance of its timber rights. Once the contract and jurisprudence regarding timber sales are properly considered, the discretionary power of a court to deny the dissolution of any contract for the breach of an obligation (the source of judicial control of leases) will be seen as inapplicable.

Sale or Lease?

The Louisiana Civil Code articles distinguishing sale and lease indicate that the object of sale is the conveyance of the ownership of a thing while the object of lease is the temporary transfer of the enjoyment of a thing during a certain time. La. C.C. arts. 2439 and 2674. In the context of a standing timber sale which, of necessity, requires some time for removal of the object of sale from the land, the use and enjoyment of the vendor’s land remains affected by the transaction for a certain time. Despite these hybrid characteristics of the transaction which the parties labeled as both sale and lease, the sale aspect of the parties’ contract is predominate under the facts of this case.
Civil Code article 464 provides that standing timber may be a separate immovable belonging to a person other than the owner of the ground. When landowners have sold standing timber and created separate timber immovables or estates, the courts have been called upon to establish certain principles in the absence of the parties’ contract to govern the relationship between the landowner and the timber owner in this horizontal dismemberment of immovable property.
The seller’s obligation of delivery involves the “transferring of the thing sold into the power and possession of the buyer.” Former La. C.C. art. 2477 (1870); La. C.C. arts. 2475 and 2477. Therefore, the landowner’s obli *737 gation for |3the delivery of standing timber necessarily includes, as an accessory right, the allowance of ingress and egress upon the vendor’s property for the removal of the timber. Marshall v. Armand, 306 So.2d 331 (La.App. 3d Cir.1975); see former La. C.C. art. 2490 (1870), regarding accessories of the object of the sale. No additional grant of a right of use, servitude or lease of the land for the preservation and harvesting of the standing timber is necessary. Since the time set in the sale for the removal of the timber can vary, the right to temporarily continue growing the timber on the land is implied in the sale.
When the time for removal of the standing timber is not specified in the sale, the jurisprudence determined that the timber owner would be allowed an indefinite period until such time that the landowner, petitioned a court to fix a reasonable time limit for the removal of the timber. Industrial Lumber Co. v. Rogers, 158 La. 557, 104 So. 367 (1925); Willetts Wood Products Co. v. Concordia Land & Timber Co., 169 La. 240, 124 So. 841 (1929), certiorari denied, 281 U.S. 742, 50 S.Ct. 348, 74 L.Ed. 1156 (1930); and Stanga v. Lake Superior Piling Co., 214 La. 237, 36 So.2d 778 (1948).
On the other hand, when a specific time limit was fixed in the timber deed, the Louisiana Supreme Court settled on a rule requiring the vendee to remove the timber within the time period or to otherwise forfeit altogether his ownership. In St. Louis Cypress Co. v. Thibodaux, 120 La. 834, 844, 45 So. 742, 746 (1908), the court reviewed the resolution of this issue in other states and concluded:
While much can be said on both sides of the question, we are of opinion that both the weight of authority and of logic is in favor of the general rule stated in Am. & Eng. Enc. Law, supra. This rule, moreover, accords with the manifest intention of the parties that the rights conveyed should be exercised within the term granted, or within a reasonable time, when no term is stipulated. The contrary doctrine leads to the anomalous result that the purchaser after the lapse of the term, expressed or implied, retains the title to the timber, Jjbut cannot enter on the land for the purpose of removing his own property without committing a trespass.
This reversionary rule, which admittedly enriches the landowner at great expense to the timber vendee, remains the established rule of property in Louisiana. The rule is an important rule for ownership of land, marking definitively the end of the horizontal division of the ownership of the immovable. See, Crowell & Spencer Lumber Co. v. Burns, 191 La. 733, 186 So. 85 (1939), reviewing the jurisprudence and stating “this court has never held that where the parties have agreed upon a delay in which to remove the timber, such delay might be extended by the court.” See also, A. Yiannopoulos, Property § 135 in 2 Louisiana Civil Law Treatise, 302-303 (3rd Ed.1991).[1]
In view of the above principles, in 1972 Pegues conveyed standing timber for a substantial price thereby creating a separate timber immovable in Martin. Cleared land to be used for planting trees was not the subject of the transaction. The sale of standing timber was central to the agreement. When those same trees had further matured in 1982 at the end of the term for harvesting, the parties effectively extended the term for up to 15 additional years by their 1982 agreement. The evidence indicates that the trees existing on the tract in 1972 remain unharvested today.
With the creation of the separate timber estate by these transactions, the issue between Pegues and Martin for the removal of the timber and the unburdening of the landowner’s tract could be addressed in the par *738 ties’ contract or |5be subject to the established jurisprudential rules, including the forfeiture or reversionary rule enunciated in St. Louis Cypress Co. The critical language chosen by Martin and Pegues for the term for the removal of the timber is expressed in both the “sale” and “lease” sections of the contract as follows:
“the right to cut and remove said timber ... shall terminate on the. 1st day of July, 1983.”
“the right to cut and remove said timber may be extended by the payment of annual rentals ...”
“This lease shall terminate ... unless on or before [July 1, 1983] Lessee shall pay
[[Image here]]
“In like manner and upon like payments ..., the Lessee may maintain the lease ... for successive periods of twelve (12) months.”
Under this “may pay,” “may maintain,” and “unless pay” language of the contract, Martin was not obligated to pay each yearly installment.[2] Neither was Martin evér obligated to Pegues to harvest the timber. The majority decision gives no analysis' of the specific language of the contract supporting its conclusions to the contrary.
Martin’s right to make payments to maintain its ownership of the standing timber was expressed in conditional or optional language for the year-to-year extension of the term for removal of the timber. Nonpayment therefore amounted to an express resolutory condition [3] by which Martin’s ownership of the timber fended in a manner similar to the reversion recognized in St. Louis Cypress Co., without the necessity for a putting in default by Pegues and the allowance of an additional time to perform. Indeed, Martin’s actions to either cut or pay are actions to preserve its ownership at its option, not performance obligations owed to Pegues.[4]
The separate section of the agreement entitled “lease” expressly grants Martin rights for “growing, protecting, conserving and harvesting timber” on the property. As indicated above, however, these rights are accesso-rial rights of any timber vendee with an extended term for cutting the timber. Cf., Cooley v. Meridian Lumber Co., supra, where the timber deed with a fifty-year term for harvesting was viewed by the court as a sale. The fact that the stated term in the sale for cutting the trees is the equivalent of a time period for the use and enjoyment of the land for growing the timber has never previously required our courts to assess these sale contracts as leases. See, Smith v. Huie-Hodge Lumber Co., 123 La. 959, 49 So. 655 (1909), where the court rejected the contention that a mere license or lease is granted and applied the sales provision for lesion, and Crowell & Spencer Lumber Co. v. Burns, supra, where the court rejected the claim that the fifteen-year contract contained both a sale of standing timber and an additional grant of a servitude for use of the property. Martin’s option for annual payments essentially deferred the time for harvesting so as to maintain its ownership while incidentally allowing for additional growth.
Nothing, therefore, in the “lease” section of the parties’ agreements or in the facts pertaining to this tract of land changes the predominate focus of this contract |7from the sale or conveyance of ownership of the standing timber in 1972, the same timber which remains standing today. The temporary *739 transfer of the enjoyment of the land in the nature of a lease was incidental to the sale of standing timber.[5]
Application of La. C.C. art. 2013 — Judicial Control
The majority appropriately and very informatively identifies the so-called doctrine of judicial control of leases with the codal authority for judicial discretion in the dissolution of contracts under La. C.C. art.2013. That article, however, is premised upon an obligor’s failure to perform. Martin’s option to make the annual payment, which was not exercised in 1996, did not result in the breach of a performance obligation. Martin is not a defaulting obligor which can call upon the discretion of the court for additional time to perform an obligation.
The case of Standard Oil Co. of Louisiana v. Milholland, 167 La. 707, 120 So. 59 (1929), recognizes this very distinction. In referring to former Civil Code articles 2046 and 2047, the source articles for La. C.C. art.2013 and for the allowance for judicial discretion in the dissolution of contracts, the court held that “those provisions relate exclusively to delays to be given a party in default,” not a party who fails to exercise an optional right or privilege.' Id., 120 So. at p. 60. The court concluded: “We know of no law which permits a court to allow a party any additional delay in which to exercise a privilege which he was not bound to take advantage of.” Id. Accord, Southern Ventures Corporation v. Texaco, Inc., 372 So.2d 1228 (La.1979) and Thibodeaux v. Zigler, 121 So.2d 296 (La.App. 1st Cir.1960).
| gin the context of the sale of standing timber, the court in St. Louis Cypress Co., was, in essence, asked to provide an equitable remedy or judicial control to extend the term of the timber removal for the owner of the separate timber estate. The court declined and thus freed the land ownership of the burden of the timber estate in a definitive manner. Equitable relief is, of course, inapplicable to extend a prescriptive period of non-use for the benefit of a dilatory servitude owner and has been denied after the violation of the ninety-day period for removal of buildings and other constructions or plantings from the land of another under La. C.C. art. 493.[6] In the context of-mineral leases, delay rental provisions couched in terms identical to Martin’s contract have caused the automatic termination of such leases for nonpayment. See La. R.S. 31:133 and cases cited in its comment. These are analogous examples in our law of how dismembered ownership of immovable property ends when the privilege or optional right of an owner is not exercised. The authority for judicial control over leases and the dissolution of contracts in general is inapplicable.

. In Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940), the court held that, in the absence of a provision regarding the immature timber or timber not yet planted, only the merchantable or specifically designated timber on the date of sale is the object of the sale. Timber that becomes merchantable or above a specific size after the date of the sale but before the end of the vendee's time for removal remains owned by the landowner. This issue has not been raised in this case since the timber originally sold in 1972 was, apparently, for the most part, over 10-inches in diameter. The evidence is also clear that Martin never planted any timber on this tract.

.As discussed in the official comment to Article 133 of the Mineral Code (La. R.S. 31:133), mineral leases with delay rental provisions using similar conditional language terminate automatically upon the lessee's failure to pay. Recognizing the distinction now missed by the majority, the comment states:
In the case of express resolutory conditions such as the typical delay rental clause, it is provided that "this lease shall terminate” unless the rental is paid or some other necessary condition for maintenance is met. If this does not occur, the lease goes out of existence. The case is different, however, where the basis for the lessor's complaint is nonperformance.

. La. C.C. art. 478 provides that "the right of ownership may be subject to a resolutory condition.”

. In contrast to this language employed for the payment of delay rentals, the contract provision regarding Martin’s obligation for the annual payment of ad valorem taxes assessed against the land required a thirty-day written - demand for performance by Pegues prior to an action for dissolution of the contract.

. The 99-year timber leases recognized in McCain v. Continental Can Company, Inc., 299 So.2d 454 (La.App. 2d Cir. 1974) and IP Timberlands Operating Company, Limited v. Denmiss Corporation., 931637 (La.App. 1st Cir. 6/28/95), 657 So.2d 282 obviously contemplated multiple cycles for growing and harvesting trees. Viewing such agreements as leases of land in a 99-year context differs from the case at hand where the trees sold ih 1972 remain on the property at the termination of the contract.

. See, Wilson v. Capitano, 95-39 (La.App. 5th Cir. 5/10/95), 656 So.2d 696. Martin has made no argument regarding La. C.C. art. 493, which, in pertinent part, provides:
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner.
Standing timber which has been the subject of a sale and left on the land in violation of a term for removal is analogous to the immovable improvements left oh the property of another listed in Article 493. Yet, when standing timber is the primary focus of the transaction and a term is set by the parties’ initial contract, the vendor does not need to reset another term by employment of Article 493. When this second paragraph of Article 493 was enacted in 1984, the legislature did not choose to overrule the reversionary rule of St. Louis Cypress Co. by including sold standing timber with the other listed things attached to the property of another.