(110 So. 746)

· No. 27854.

### TAYLOR v. SOUTHLAND LUMBER CO., Inc.

(Nov. 29, 1926.)

(Syllabus by Editorial Staff.)

1. **Logs and logging** ⊂⊃3(15)—Evidence held to establish that defendant had, in compliance with contract, cut and removed all merchantable timber on certain lands.

Under contract for purchase of timber, having provision that all timber should be cut on certain tracts before cutting on other tracts, evidence *held* to establish that defendant had cut and removed all merchantable timber on certain tracts.

2. **Logs and logging** ⊂⊃3(7)—Purchaser's construction of contract for sale of timber and execution in accordance therewith became binding upon him.

Where purchaser construed contract for sale of timber as meaning that, as soon as cutting operations were completed on certain sections, all lands so operated on were automatically released to seller, and acted in accordance therewith, such construction became binding upon him.

3. **Logs and logging** ⊂⊃3(10)—Under timber contract, buyer could not continue cutting operations for maximum period on certain lands after once cutting merchantable timber thereon.

Under contract for purchase of timber, to be cut within ten years, with provision that cutting on each half-section should be continued until completed, and land then released to seller, buyer could not, after cutting merchantable timber on certain land, continue operations thereon until ten-year period was up.

Appeal from Eighteenth Judicial District Court, Parish of Pointe Coupee; Wm. C. Carruth, Judge.

Action by Edgar Taylor against the Southland Lumber Company, Incorporated. From a judgment for plaintiff, defendant appeals. Affirmed.

Albin Provosty, of New Roads, and Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellant.

Laycock, Borron & Laycock, of Baton Rouge, for appellee.

.THOMPSON, J. This suit involves the right of the defendant, under a contract of purchase of the timber on a certain described tract of land, to continue operations until all of the timber is cut and removed from every portion of the land within the maximum period of ten years.

The plaintiff owned what is known as Argyle plantation in the parish of Pointe Coupee. In January, 1920, he sold all of the standing and down timber upon certain portions of the plantation, being that in the rear and to the north of the cultivatable land.

The price of the timber was $100,000, of which defendant paid $15,000 cash and gave five notes for $15,000 each and one note for $10,000, the said notes maturing in from one to five years, respectively, after date.

The pertinent provisions of the contract are as follows:

"(1) The purchaser shall have ten (10) years within which to remove the timber from said land. The timber shall be cut in the equivalent of half sections and the purchaser shall within six (6) months from the date hereof begin cutting on lot or section sixty-five and lot or section sixty-four (64), in township five (5), range eight (8) east, or in such part or parts of either or both lots or sections as purchaser may select.

"(2) After commencing the cutting in lots or sections sixty-five (65), and sixty-four (64), or any part or either or both thereof, the purchaser shall cut and remove all timber and surrender all land to the south and east before commencing the cutting and removal of the timber in sections eighty-three (83) and eighty-four (84), provided purchaser shall, when it desires, cut timber for one-quarter of a mile on both sides of its railroad through section eighty-three (83).

When the purchaser has commenced cutting on the equivalent of any half section, it shall continue thereon until all merchantable timber thereon shall have been cut; provided, purchaser is not prevented from so continuing by strikes, labor troubles, the act of God, storms, floods, weather or other causes beyond purchaser's control.

"(3) After commencing the cutting and removal of the aforesaid timber, the purchaser shall continue therewith unless prevented by strikes, labor troubles, storms, floods, water, the act of God, or other cause beyond purchaser's control, and as the timber is cut and removed from the equivalent of a half section of the aforesaid land, such equivalent of a half section shall be released and returned to the vendor.

"(4) When the purchaser shall have completed the cutting and removal of the herein conveyed timber, the land shall be surrendered the vendor, provided, however, that the purchaser shall retain its railroad rights of way as hereinabove provided and shall have full and ample time within which to remove all lines of railroad which it may have on said land, should it elect to do so, but purchaser shall be liable to vendor for any damage done by purchaser to the lands or fences therein in removing said railroad."

Within the stipulated period for beginning operations, the defendant commenced the cutting on sections 64 and 65 as provided in the contract, and continued such cutting on said sections and on all of the lands embraced in the contract except sections 83 and 84 until the greater portion of said timber was cut and removed.

The defendant paid the first and second of the series of notes, but, when the note due in January, 1922, matured, payment was refused on the ground that the amount of timber on the land was not as great as defendant thought it was when purchased, and therefore defendant was not liable for the balance of the purchase price.

The plaintiff thereupon applied to the court for the appointment of a receiver to the defendant corporation and for an injunction to restrain defendant from disposing of its assets.

In answer to this application, the defendant alleged that it had cut and moved all of the timber upon the property except an infinitesimal portion thereof, and that instead of there being the amount of timber as shown by the estimate which defendant relied upon in purchasing the timber, there was found to be a shortage of approximately 50 per cent.

Pending the proceedings for a receivership, the defendant on its own application was adjudged a bankrupt, with liabilities fixed at $400,000 and assets at $135,000.

Thereafter a compromise of the indebtedness due the plaintiff was effected, by which the plaintiff received $37,500 and 2½ miles of railroad track, worth $2,500, in full settlement of the balance due on the purchase price of the timber.

The compromise agreement stipulated that the respective rights of the parties under the contract of sale and purchase of the timber, shall continue and that the said contract shall not be affected, except that the plaintiff Taylor should be relieved from the obligation to pay for the 2½ miles of railroad.

When the compromise was effected, the defendant withdrew or dismissed the bankruptcy proceedings and renewed its operations in cutting and removing the timber from the lands on which it had previously operated.

This suit was thereupon instituted, asking that plaintiff be decreed to be the owner of all of the timber standing or down on the land described in the timber contract of sale to the defendant, except the west half of section 84, township 5, range 8 east. A sequestration was issued at the instance of plaintiff, under which all of the timbered lands except section 84 was seized, including logs which were found lying on said land.

After a trial on the merits, there was judgment in plaintiff's favor recognizing the plaintiff as owner of all of the lands de-

scribed and referred to in the petition, as well as all of the logs and timber, standing or down on said land at the time of the sequestration, except the merchantable timber, whether standing or down, that may have been situated at the time of the sequestration on sections 83 and 84 township 4 south, range 8 east.

The defendant has appealed, and the plaintiff in answer asks that the judgment be so amended as to exclude defendant's further operations on section 83.

The district judge found as a fact that the preponderance of the evidence showed that the defendant cut and removed nearly all of the merchantable timber on sections 64 and 65 and on the sections lying south and east, and had been cutting on section 84 at the time this suit was filed.

There is scarcely any dispute over the fact as thus found.

Indeed this is conceded by the defendant in a letter to the plaintiff under date of July 22, 1922.

In that letter defendant says:

"We acknowledge receipt of yours of the 12th inst. and would have replied sooner, but before doing so desired to confer with our directors.

"You say that our contract required us to begin cutting on sections 64 and 65 and to cut all merchantable timber thereon, and to release all lands cut over before beginning to cut on sections 83 and 84, and you ask us whether we have done this. We beg to say we certainly have done this.

"We cut and removed all merchantable timber as we went on sections 64 and 65, with the exception that we did cut on section 83 timber for one-quarter of a mile on each side of our railroad * * * and if you will again refer to your contract you will note that we had the privilege to do this."

It appears further that the defendant, in answer to the application for a receiver, alleged as a matter of fact that it had cut and removed all of the timber upon said property except an infinitesimal proportion thereof.

[1, 2] The letter of defendant and the allegation of fact referred to, together with the other evidence in the record, establish in our opinion:

(1) That the defendant had in compliance with its contract, cut and removed all of the timber which in its judgment was profitable to cut and remove, on all of the lands except sections 83 and 84, before entering upon the latter sections, except as otherwise permitted by the contract.

And (2) that the construction placed on the contract by the acts and conduct' of defendant was that as soon as operations were completed or ceased on sections 64 and 65, except where occasioned by or due to the causes enumerated in the contract, all of the lands so operated on were automatically released to the plaintiff.

This construction placed by the defendant on the contract is fully authorized by the expressed terms of the contract, for, while the contract grants a period of ten years within which to remove all of the timber, it is provided that the timber shall be cut in the equivalent of half sections; that the purchaser shall within six months from the date of the contract begin cutting on sections 65 and 64; that, after commencing the cutting on these two sections, the purchaser shall cut and remove all timber and surrender all land to the south and east before commencing the cutting and removal of the timber on sections 83 and 84.

This language of the contract and the obligation assumed thereunder by the defendant is clear and free from ambiguity.

However, if there was room for doubt, the contract was so construed by the defendant and executed in accordance with that construction and is now binding on defendant.

Moreover, the compromise settlement by which the plaintiff remitted to the defendant more than $20,000 of the purchase price, was made on the hypothesis, induced by the rep-

resentation of the defendant, that practically all of the timber on the land other than sections 83 and 84, had been cut and removed at the time the settlement was made.

The defendant was in error and at fault in refusing settlement on the ground that it was disappointed in the quantity of timber on the land. The purchase was made of all the timber at a lump sum price. This price was based on an estimate made by a reputable firm employed and paid by the defendant.

[3] The attitude of the defendant in its present defense is that it made a losing and unprofitable bargain, and, although it had cut and removed practically all of the timber on the land in the manner as prescribed in the contract, except the timber on sections 83 and 84, and although it has secured a reduction of or release from some twenty odd thousand dollars of the purchase price, it still has the right and ought to be permitted to renew operations on the cutover lands and to continue such operations at its own will and pleasure until the expiration of the ten-year limit stated in the contract, without paying the plaintiff the balance of the remitted purchase price or any sum whatever.

The position of defendant in this respect cannot be sustained either under the law, the contract, or the evidence in this case, or upon any sound principle of equity.

In support of its defense, it is contended that the contract does not provide for a forfeiture of the timber which defendant company bought and paid for, and that plaintiff's only remedy, was either, a suit for damages for a violation of the contract, or an injunction or other legal process to compel compliance with the terms of the contract.

Many cases are cited to sustain the proposition that the law does not favor forfeitures, and that the provisions in the timber contract should be construed as a covenant, and not as a condition subsequent.

We find it unnecessary to consider or discuss the authorities cited, for they have no application to the facts of the present case.

There is no question of forfeiture involved. The plaintiff is not seeking to recover back the timber while retaining the money paid therefor by the defendant. On the contrary, the plaintiff is endeavoring to enforce the plain terms and conditions of the contract.

The defendant assumed the obligation of first cutting the timber off of a certain part of the land and to surrender the land to the plaintiff, before going on to certain other portions of the land. The timber was so cut and removed, and, after this was done, in reply to the question of the plaintiff, whether the contract had been complied with by cutting and removing the timber and releasing the lands, the defendant said, after consulting its board of directors, "We have certainly done this."

And this was confirmed in the answer to the application for the appointment of a receiver, and reaffirmed in the agreement of compromise and settlement.

This action on the part of the defendant put an end to defendant's right to again go upon the land which it had cut over and surrendered to the plaintiff in accordance with the terms of the contract.

Our conclusion is that the trial court has correctly decided the case, and we can discover no sufficient reason for either reversing or amending the judgment.

The judgment appealed from is therefore affirmed.