(135 So. 659)

AMERICAN. CREOSOTE WORKS, Inc., v. CAMPBELL et al.

No. 29825.

May 25, 1931.

Rehearing Denied June 22, 1931.

Cas Moss, of Winnfield (Wm. B. Grant, of New Orleans, of counsel), for appellant.

R. L. Williams, of Arcadia, for appellees.

ODOM, J.

On April 28, 1923, Cicero Campbell, for himself individually and as tutor for his minor children, sold to the American Creosote Works, Inc., all of the merchantable pine timber on approximately 400 acres of land in Bienville parish for $800 cash; the purchaser being given ten years within which to remove the timber from one portion of the land and one year within which to remove it from the balance.

In the spring of 1927, long before the ten-year period had expired, Campbell sold some timber standing and growing on the same land to J. M. Duncan and J. J. McMichael, who cut and removed therefrom approximately 130,000 feet.

The present suit is by the American Creosote Works, Inc., against Campbell, Duncan, and McMichael for the manufactured value of the timber cut and removed, the plaintiff alleging that it owned the timber by virtue of its purchase from Campbell in 1923, its time for removing the same not having expired, and that defendant had cut and removed the timber in bad faith.

The defense is that plaintiff had by the end of the year 1925, or within approximately two and one-half years from the date of its purchase, cut and removed all the merchantable timber from the land and had abandoned the property; and that, having removed the timber which it purchased, that is, the timber which was merchantable, it did not own that which remained, and its rights under the timber contract had expired.

The district court sustained this defense and rejected plaintiff's demands. It appealed.

The testimony supports the defendant's contention that by the end of 1925, or at least prior to the date on which Campbell sold to Duncan and McMichael, and previous to May and June, 1927, when certain timber was taken from the land by the latter, the plaintiff had gone over the entire tract and had removed therefrom what it considered and claimed to be the merchantable pine timber. There is some conflict in the testimony as to whether plaintiff had gone over and removed the timber from the entire tract. Mr. Branch, who was employed by plaintiff and was in charge of its creosoting plant at Winnfield, testified that the timber had been cut clean from all the land except 120 acres. However, his testimony that no timber had been removed from 120 acres of the land is contradicted, not only by all the witnesses called by defendant, but by Mr. Koonce, who was called by plaintiff. Mr. Koonce testified that he was employed by plaintiff to cut the timber suitable for piling, and that he cut from all parts of the land. He said that there was also tie and saw timber on the land, all of which had been removed by others who went upon all parts of the tract.

The defendants called as witnesses a number of persons who were employed by plaintiff to cut and remove the tie and saw timber from the land. Among these were George Simpson, Ed Thomas, J. E. Morgan, Spencer Hays, and Hardy Hays. Each of these testified that the timber had been removed from all parts of the land. One of them stated that all of the timber "that would do," meaning, as we understand, all that was considered merchantable, was cut and removed from the entire tract. Simpson says he cut "all over the land" and got all the timber except a few trees in a boggy, rough branch bottom. Morgan says that he cut over "every bit of it" except in this branch bottom. Spencer Hays and Hardy Hays say the land "was cut all over." Ed Thomas says they got all the timber that was merchantable. They all say in substance that the trees suitable for piling were first removed, and that the loggers went back and cut the rest.

The testimony shows that there were only a few trees in this branch bottom, and we infer that these were intentionally left as being worthless because the condition of the branch bottom was such as to make the logging of them too expensive.

The testimony satisfies us that plaintiff did remove from the land all of the trees

which it considered at the time suitable for either piling, ties, or sawlogs. We are further satisfied that, after these timber operations, the purchaser intended to forego permanently any further right or interest in the timber.

Mr. Simpson, who was employed to remove the ties and sawlogs, says that, after the timber crew had gone over all of the land, Mr. Branch, plaintiff's manager, told him "they were through and to quit." Mr. Campbell, the owner of the land, testified that "Mr. Branch told me that they were through, and pointed out a couple of trees that were still standing and said, 'Wonder why they did not get those.'" Mr. Branch was recalled, and, on having his attention called to the statement of Campbell just referred to, said that he had no recollection of having made such a statement. He did not deny having done so, and said nothing about Simpson's testimony to the same effect.

In addition to this, there are certain circumstances which strongly indicate that plaintiff considered it had gotten all the timber it purchased. The tract of land is not far from a tram or logging road belonging to the Bodcaw Lumber Company, and, in order to get its timber hauled, plaintiff built a spur track to said tram sufficient in length to accommodate six cars. After cutting the timber from the land, and after Branch told Campbell and Simpson that "they were through," plaintiff removed the rails from the spur track and abandoned it. Another circumstance is that the timber was assessed to the plaintiff from the date it was purchased until 1926 and the taxes were paid by it. The timber was thereafter left off the tax rolls. The assessor says he dropped the timber from the rolls because he had information from some one, he does not know whom, that the timber had been removed. At any rate, plaintiff did not return the timber for assessment for the years 1926, 1927, and 1928.

Plaintiff left a few trees on the land which were above 12 inches in diameter at the stump, and which were knotty and rough. Evidently it did not want them; otherwise it would have cut and removed them along with the other timber when the crew was at work and when facilities were at hand for hauling them away.

Plaintiff, having removed the merchantable timber from the entire tract of land, had no further rights under its contract. Counsel for appellant call our attention to the fact that plaintiff was granted ten years from the date of deed "within which to cut and remove said timber from said land." That clause in the deed, however, cannot be construed to mean that the vendee was given the right to continue the cutting and removal of timber from the land over the entire period of ten years. What that clause means is that the vendee had the right to go upon the land at any time within the ten-year period for the purpose of removing the timber which it purchased; that is, the timber which was merchantable on the date of the purchase. The right to go upon the land for that purpose could have been exercised at any time within the ten-year period. But, when the vendee once exercised that right and removed the timber which it purchased, all privileges given it under the contract ceased. While the vendee could exercise its right of removal at any time within the ten-year period, yet, if it chose to remove its timber at the beginning of that period, the contract was at an end after the right was exercised. Taylor v. Southland Lumber Co., Inc., 162 La. 535, 110 So. 746.

A person who purchases timber under contract like the one under consideration, that is, certain designated timber with right of removal within a specified period, may exercise his right and remove the timber from a part

of the tract and cease operations for a time, without losing the right to remove his timber from the remaining portion of the land. But, if he goes over the entire tract and removes therefrom the timber which he purchased, he cannot later go upon the cut-over land and renew operations, even though the time given for removal has not expired.

It is contended that plaintiff did not remove all the merchantable timber during its operations, but left some of it standing. As the contract is silent as to what timber was understood to be "merchantable," we must interpret it in that respect as the parties thereto understood it. It is evident that both the vendor and the vendee understood that the sale included all trees then on the land suitable either for piling, crossties, or sawlogs. The plaintiff employed a crew of men to cut and remove the timber. Mr. Branch, plaintiff's manager, was on the ground in charge of these timber operations. He caused to be cut and removed trees suitable for the purposes above mentioned. The timber crew continued until they were told to quit, that "they (meaning the plaintiff) were through." Operations then ceased, the spur track was pulled up, the land abandoned, and nothing was heard from plaintiff's manager for nearly two years.

It does not seem reasonable that plaintiff's manager would have left on the land any timber which he considered merchantable, especially as he operated over the entire tract. We think he removed all the timber which he considered merchantable. Campbell, the other party to the contract, thought so, as did all the members of the timber crew.

Counsel for appellant cites the case of Pearce et al. v. Ford et al., 124 La. 851, 50 So. 771, holding that "mere silence does not bring about the loss of title to real estate except in connection with prescriptions estab-

lished by law," and the case of Brown v. Hodge-Hunt Lumber Co., Inc., 162 La. 635, 110 So. 886, to the effect that "owner of standing timber, failing to have it assessed, does not waive right whereby it passes to owner of the land." He also cites authorities in support of the proposition that the presumption is against the voluntary or gratuitous renunciation of a right.

These authorities are not in point, for the reason that there is no question of abandonment or release of property or real rights involved. Plaintiff exercised its rights under the timber contract by going upon the land and removing all the timber which it purchased. It had no further or other rights and no property to abandon. Such trees as were on the land in May, 1927, belonged to the owner of the land, who had the right to dispose of them.

The judgment appealed from is correct and is affirmed, appellant to pay all costs.