200 So. 821

**CLARK v. WEAVER BROS. REALTY COR-
PORATION (PEAVY–WILSON LUM-
BER CO., Warrantor).**

No. 35693.

Feb. 3, 1941.

Rehearing Denied March 3, 1941.

John G. Gibbs, of Natchitoches, for plaintiffs.

W. W. McDonald, of Shreveport, and J. D. Rusca, of Natchitoches, for defendant.

John B. Files, of Shreveport, for warrantor.

ODOM, Justice.

Plaintiff brought this suit against Weaver Brothers Realty Corporation to recover $3,187.51, the alleged manufactured value of 85,000 feet of timber removed from his land. As a cause of action, he alleged that he owned four certain tracts of land in Natchitoches Parish, aggregating 233 acres, and that defendant had trespassed thereon and in bad faith had cut and removed therefrom 85,000 feet of timber. Coupled with this demand, he prayed that defendant be enjoined from further trespassing.

Defendant in answer admitted plaintiff's ownership of the land described and admitted that it had cut and removed therefrom 54,799 feet of timber. It denied, however, that it had trespassed upon the land and alleged that it owned the timber which it removed, having purchased it under a contract which gave it the right to cut and remove the timber from the land within 15 years from May 12, 1927, which time limit had not expired at the time of the cutting. It alleged that it acquired all the standing timber on the land from Peavy-Wilson Lumber Company, Inc., on October 22, 1936; that Peavy-Wilson Lumber Company acquired the timber from J. W. Canady on May 12, 1927, and that Canady acquired it from the plaintiff Clark on the same date, and that said transfers were evidenced by notarial acts of sale recorded in the Conveyance Records of Natchitoches Parish, where the land is situated. It denied that it owed plaintiff anything and prayed that plaintiff's demands be rejected at his costs.

Alleging that it purchased the timber from Peavy-Wilson Lumber Company under full warranty of title, defendant called its vendor in warranty. The Peavy-Wilson

Lumber Company answered the call in warranty, setting up the same defenses as those made by defendant in its answer. There was judgment in favor of plaintiff against the defendant for $393.89, and judgment in favor of the defendant and against the warrantor in the same amount. The defendant and the warrantor appealed. Plaintiff answered the appeal, praying that the amount of the judgment be increased to the amount demanded.

This suit was filed in February, 1939. Plaintiff then owned the land on which the timber involved was standing, and defendant admits that it had, just prior to the date on which the suit was filed, cut and removed from the land 54,799 feet of timber. According to the documentary evidence offered by defendant, it owned not only the timber removed, but all the merchantable timber remaining on the land, which admittedly amounts to 325,000 feet.

Defendant offered and filed in evidence four timber deeds. One is a deed from the plaintiff C. B. Clark to J. W. Canady dated May 12, 1927, and recorded on the following day in Conveyance Book 159, at page 303, of Natchitoches Parish. This deed was passed before a notary public and signed by both Clark and Canady in the presence of two witnesses. It recites that C. B. Clark appeared before the notary and declared that "for and in consideration of the price and sum of Two Thousand & No/100 Dollars, cash to him in hand paid by J. W. Canady, the receipt whereof is hereby acknowledged, that he has bargained and sold and doth by these presents grant, bargain, sell, convey, transfer and deliver and set over with full warranty of title * * * to the said J. W.Canady * * * the following described property situated in the Parish of Natchitoches, State of Louisiana to-wit:

"All the merchantable timber of every kind and specie [sic], lying, standing and being situated on the following land, to-wit."

Then follows a description of the land. Immediately following the description is a clause which reads as follows:

"It is agreed and understood by and between the vendor and the vendee herein, that the vendee herein shall have a period of Fifteen (15) years from date hereof in which to cut and remove said timber from and off of the above described land."

The vendee is given the right of "ingress and egress over and across said land, with right to construct dirt roads, tram roads and railroads, Spurs, Switches, over and across the above described land, with right to erect or construct Logging Camps, and such other rights and privileges that may be deemed necessary for the proper handling of said timber and removing same from and off of said land".

On the following day, May 13, 1927, J. W. Canady, Clark's vendee, sold the same timber to the Peavy-Wilson Lumber Company, Inc., giving to the lumber company the same time within which to remove the timber as Clark gave him, 15 years. This deed, like the one from Clark to Canady, gave the vendee all the necessary rights and privileges to go upon the land for the purpose of removing the timber.

On September 12, 1928, C. B. Clark, the plaintiff, sold to the Peavy-Wilson Lumber Company, Inc., "All of the timber of each and every kind situated upon the following described land, to-wit". The land described in this deed seems to be a part of that described in the deed from Clark to Canady. But we note a slight discrepancy in the descriptions, and, since this sale was made for "One Dollar cash in hand paid and other valuable considerations", it is likely that this act was passed to correct the description. Clark gave the vendee 15 years from May 12, 1927, to remove the timber, this being the date of the first deed.

On October 22, 1936, the Peavy-Wilson Lumber Company, Inc., sold to Weaver Brothers Realty Corporation, the defendant in this case, "all pine timber measuring twelve inches and above at the stump standing, lying and growing on the following described lands, to-wit."

The description of the land in this deed includes the Clark land. The vendee was given six years from the date of the deed to remove the timber; so that the time limit to remove would expire on October 22, 1942. Each of the deeds mentioned is recorded in the Conveyance Records of Natchitoches Parish.

Since Clark, the plaintiff, sold his timber to Canady on May 12, 1927, and allowed 15 years—or until May 12, 1942—for its removal, it clearly appears from the deeds filed in evidence that plaintiff did not own the timber on his land when the alleged trespass took place, which was just prior to the filing of the suit in February, 1939.

And it appears also from these deeds that the defendant did own it at that time.

Counsel for plaintiff concedes this. But he grounds his argument that plaintiff owned the timber at the time the alleged trespass was committed upon the theory that, while Canady, his vendee, and Canady's assigns had a period of 15 years within which to remove the timber, or until May 12, 1942, the right of removal was exercised in 1933 or 1934 by the Peavy-Wilson Lumber Company, Inc., Canady's vendee, which company, through its agent, Spence, entered upon the land at that time, cut and removed the merchantable timber which it had purchased, and that, when it did so, all privileges granted by the timber contracts ceased, and that those holding under the Clark deed could not reenter upon the land for the purpose of removing timber. And this gives rise to the claim that the Peavy-Wilson Company, having exercised its privileges under the contracts, had nothing to convey to its vendee, the Weaver Brothers Realty Corporation, the defendant. Hence Weaver Brothers Realty Corporation was a trespasser.

Having advanced this well recognized rule in support of his claim of present ownership of the timber, the burden was on plaintiff to prove that Peavy-Wilson Lumber Company had exercised and exhausted the privileges granted by the contracts.

The notarial transfer from Clark to Canady is in the true sense a deed by which Clark, the owner of the land, transferred to Canady title to all timber on the land which was then merchantable. The

effect was to create a separate estate consisting of the then merchantable timber, segregating the timber from the land. There were then two estates, one consisting of the land, the other of the timber, which, like the land, was real estate. The sale of the timber was a sale of real estate. Thereafter, the ownership of the one estate was entirely separate and distinct from the ownership of the other. Act 188 of 1904; Smith v. Huie-Hodge Lumber Co., 123 La. 959, 49 So. 655; Hyde v. Barron, 125 La. 227, 51 So. 126; Brown v. Hodge-Hunt Lumber Co., 162 La. 635, 110 So. 886; Gray v. Edgar Lumber Co., 138 La. 906, 70 So. 877; Simmons v. Tremont Lumber Co., 144 La. 719, 81 So. 263; Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275.

When Clark created a separate estate consisting of the then merchantable timber on his land and conveyed by deed that estate to his vendee, Canady, he, by the same deed, granted privileges which made it possible for his vendee, his heirs and assigns to take possession of and use the estate conveyed. He granted to the vendee, his heirs or assigns "the right of ingress and egress over and across said land", with right to construct roads of all kinds "over and across the above described land", and the further right "to erect or construct Logging Camps, and such other rights and privileges that may be deemed necessary for the proper handling of said timber and removing same from and off of said land".

Without these rights and privileges the estate conveyed would have been of no value to the vendee or his assigns. But the vendor and the vendee mutually agreed that the vendee or his assigns should have a limited period of time, 15 years from the date of the deed, in which to go upon the land estate in order to take possession of, and use, the timber estate.

This court has held that the purchaser of standing timber, with a specified time limit within which to remove it from the land, may at any time within the period prescribed enter upon the land and exercise the privileges granted. But, when the vendee once enters upon the land and exercises the privileges of removing therefrom the estate which he purchased, his right of entry granted by the timber deed ceases, and he cannot again enter upon the land and remove therefrom timber which was not a part of the estate purchased, which estate, under the contract in this case, consisted of the timber on the land which was merchantable on the date of the sale.

We stated the rule in clear and unmistakable language in the case of American Creosote Works, Inc., v. Campbell et al., 172 La. 866, 135 So. 659. In that case, Campbell sold to the American Creosote Works all the merchantable pine timber on about 400 acres of land, giving the purchaser 10 years within which to remove the timber from one portion of the land and one year to remove it from the balance. The sale was made in 1923. In 1927, which was six years prior to the date on which the 10-year period expired, Campbell sold to Duncan and McMichael some standing timber then growing on the same land. Duncan and McMichael removed certain timber from the land, and the American Creosote Works, Campbell's first vendee,

sued Campbell, Duncan, and McMichael for the manufactured value of the timber cut, alleging that defendants had removed the timber in bad faith.

The claim advanced by the plaintiff in that case was that it owned the timber removed by defendants because its time limit for the removal of timber from the land had not lapsed. The defense was that plaintiff had by the end of 1925, some two and a half years after its purchase, "cut and removed all the merchantable timber from the land and had abandoned the property; and that, having removed the timber which it purchased, that is, the timber which was merchantable, it did not own that which remained, and its rights under the timber contract had expired".

The issue involved in that case is precisely the same as that involved in this one. In that case we said:

"Plaintiff, having removed the merchantable timber from the entire tract of land, had no further rights under its contract. Counsel for appellant call our attention to the fact that plaintiff was granted ten years from the date of deed 'within which to cut and remove said timber from said land.' That clause in the deed, however, cannot be construed to mean that the vendee was given the right to continue the cutting and removal of timber from the land over the entire period of ten years. What that clause means is that the vendee had the right to go upon the land at any time within the ten-year period for the purpose of removing the timber which it purchased; that is, the timber which was merchantable on the date of the purchase. The right to go upon the land for that purpose could have been exercised at any time within the ten-year period. But, when the vendee once exercised that right and removed the timber which it purchased, all privileges given it under the contract ceased. While the vendee could exercise its right of removal at any time within the ten-year period, yet, if it chose to remove its timber at the beginning of that period, the contract was at an end after the right was exercised. Taylor v. Southland Lumber Co., Inc., 162 La. 535, 110 So. 746.

"A person who purchases timber under contract like the one under consideration, that is, certain designated timber with right of removal within a specified period, may exercise his right and remove the timber from a part of the tract and cease operations for a time, without losing the right to remove his timber from the remaining portion of the land. But, if he goes over the entire tract and removes therefrom the timber which he purchased, he cannot later go upon the cut-over land and renew operations, even though the time given for removal has not expired."

In that case the testimony showed that the American Creosote Works, the first purchaser, prior to the date on which Campbell made the sale to Duncan and McMichael, "had gone over the entire tract and had removed therefrom what it considered and claimed to be the merchantable pine timber". We mentioned the witnesses by name and reviewed their testimony. We held that the testimony showed that the plaintiff had removed all the timber it bought and had abandoned the property.

In explaining the meaning of the clause in timber deeds which gives the purchaser a limited time in which to remove the timber, we were careful to say that it meant "that the vendee had the right to go upon the land at any time within the ten-year period for the purpose of removing the timber which it purchased; *that is, the timber which was merchantable on the date of the purchase*". And "when the vendee once exercised that right *and removed the timber which it purchased,* all privileges given it under the contract ceased". And again, that a person who purchases "certain designated timber", with the right of removal within a specified time, may exercise the right "and remove the timber [meaning the designated timber] from a part of the tract and cease operations for a time, without losing the right to remove his timber [meaning the timber he purchased, or the designated timber] from the remaining portion of the land". And further, that, if he "goes over the entire tract and removes therefrom the timber which he purchased," he cannot later go upon the cut-over land and renew operations. (Italics ours.)

In the case of American Creosote Works v. Campbell, supra, the testimony showed that plaintiff had gone upon every part of the land, had "cut 'all over the land' ", the land "was cut all over", the loggers had cut over "every bit of it". And, as to the timber, the witness Koonce said he was employed to cut the timber suitable for piling and that he "cut from all parts of the land" and that there was "also tie and saw timber on the land, all of which had been removed by others who went upon all parts of the tract". In that case, the purchaser had

taken all he bought, and we held that it had exercised its rights and that therefore its privileges ceased.

In the case of Taylor v. Southland Lumber Co., Inc., 162 La. 535, 110 So. 746, 748, which we cited and followed in the American Creosote Works case, the purchaser of the timber had "cut and removed practically all of the timber" on certain tracts of the land "in the manner as prescribed in the contract", and we held that, in so far as those tracts were concerned, "This action on the part of the defendant put an end to defendant's right to again go upon the land which it had cut over and surrendered to the plaintiff in accordance with the terms of the contract".

We adhere to the rule laid down in the American Creosote Works and Taylor cases. But the testimony in the case at bar does not warrant the application of that rule. The only witness called by plaintiff to prove that the Peavy-Wilson Lumber Company had exercised all the rights and privileges granted by the timber deed was a man named Spence. Spence testified that in the year 1933 or 1934 he owned and operated for a period of seven or eight months a small sawmill located near the Clark land, and that, while he was operating the mill, Mr. Peavy, of the Peavy-Wilson Company, instructed him to cut and remove from the Clark land some timber suitable for making "caps, deckers and twenty-foot stringers". Just what kind of timber he used for making "caps, deckers and stringers" is not explained. The witness Spence said:

"Mr. Peavy instructed me to cut nothing but caps, deckers and twenty foot stringers. It was at a loss, in fact all the cutting was at a loss. I only cut lumber in making deckers, caps and stringers."

And in answer to a question propounded by plaintiff's counsel as to what other instructions Mr. Peavy gave him "with reference to the merchantable timber as of the date" on which he did the cutting, the witness Spence said:

"As I stated. Was not to cut lumber as we couldn't get a price out of it that would even pay us to handle it."

The witness Spence made it clear that the reason he "Was not to cut lumber" was that there was no market for lumber at that time. As he said, "we couldn't get a price out of it that would even pay us to handle it". He was asked what the condition of the lumber market was at the time he was operating his sawmill, and he said, "That was during the depression and there was very little lumber business. I was instructed not to cut any lumber. Wasn't worth it and couldn't sell it."

This witness was questioned as to how many trees he cut for caps, stringers, and deckers, and as to how many board feet of lumber the trees would make, and he said he did not know. But a witness named McGimsey, called by defendant, estimated that Spence cut approximately 5,000 feet. Spence gave no information as to what kind of trees he cut or from what part or portion of the land they were taken. However, we infer from his testimony that he thought he cut all the trees suitable for making caps, deckers, and stringers—whatever they are.

Mr. Spence said that about a month after he finished his cutting a man named Jim Isgit cut some piling from the land, but he did not say how much. Isgit did not testify.

Spence and McGimsey were the only witnesses called to testify as to the timber cutting in 1933 or 1934. Spence was called by the plaintiff, McGimsey by the defendant. Plaintiff relies on their testimony as ground for his claim that the Peavy-Wilson Company, the then owner of the timber, exercised and exhausted its rights and privileges under the timber contract.

No effort was made to prove that the Peavy-Wilson Lumber Company or anyone else holding under the Clark timber deed removed, or intended to remove, from the Clark land in 1933 or 1934, or at any other time, all of the timber which Clark sold in 1927. Nor did plaintiff offer any testimony to show what size timber was considered merchantable on the date Clark made the sale.

There is an admission in the record "by all parties hereto" that there was approximately 325,000 feet of standing timber on the Clark lands at the time the suit was tried in November, 1939, this timber being of "sizes comparable to that which has been cut by the defendant". There is in the record a list showing that defendant cut and removed from the land just prior to the date the suit was filed approximately 368 trees, ranging in size from 11 to 23 inches in diameter at the stump. In the list are only 12 trees as small as 11 inches. Plaintiff al-

leged that defendant removed 85,000 feet of timber in November or December, 1938; so that, at the time of the alleged trespass, the amount of timber on the land 11 inches and up in diameter at the stump was approximately 380,000 feet, and the testimony shows that it was a good grade of timber.

█ Plaintiff's argument is that, because it was not profitable to manufacture trees into lumber in 1933 and 1934, due to the general economic depression which prevailed at that time, the trees which remained on the land after the Spence cutting, although they were of sufficient size to be manufactured into lumber and may have been included in the Clark sale, should not be classified as "merchantable timber". There is no merit in this argument. Trees large enough to be manufactured into lumber are generally understood to be "merchantable timber".

█ The timber operations of Spence were what sawmill men refer to as "selective cutting"—that is, the cutting of trees suitable for special purposes—, and counsel for plaintiff say in their brief that it was a "selective cutting". Spence explained this by saying that he was instructed to cut trees suitable only for caps, stringers, and deckers, and not to cut lumber. He cut only about 5,000 feet of the timber, a very small percentage of the amount then on the land. The timber included in the deed which remained on the land after this selective cutting belonged to the purchaser, who enjoyed the privilege of removing it at any time within the limit specified.

One of the purposes of acquiring a long period of time for the removal of timber is to obviate the necessity of manufacturing it during unfavorable market conditions. The selection and removal of a few trees from this tract of land, which selected trees were but a small percentage of all the trees owned, and the leaving on the land of the other trees owned, because there was at the time no market for lumber into which they might have been manufactured, cannot be considered as an exercise and exhaustion of the entire right and privilege granted by the Clark contract. The purchaser of this timber enjoyed the right and privilege of removing from the land the whole of the timber estate at any time within the 15-year period. Clearly that right was not exhausted in this case by the Spence selective cutting.

Plaintiff's cause of action is not grounded upon the theory that defendant cut and removed timber which was not included in Clark's deed to Canady—that is, timber which was not then merchantable. He offered no testimony to show what size timber was then considered merchantable.

Our ruling in this case is not to be construed to mean that plaintiff may not yet, by an appropriate action, establish his present ownership to all such timber now on the land as was not considered merchantable at the time he sold. Cooley et al. v. Meridian Lumber Co., 195 La. 631, 197 So. 255.

For the reasons assigned, the judgment appealed from is reversed and set aside, and plaintiff's suit is dismissed at his costs.

O'NIELL, C. J., and LAND, J., take no part.