On June 13, 1938, the parties to this suit entered into a written contract covering the sale by the plaintiff to the defendant, of "all the merchantable timber, both oak and pine lying, standing or being on" a certain described tract of land shown in the testimony to comprise about eighty acres. Under a clause in the contract, the vendee was given five years from its date to cut and remove the timber. He exercised his rights over the tract of land by going upon it to cut and remove some of the timber on more than one occasion. In this suit instituted by plaintiff, who was the vendor, it is claimed that defendant was proceeding to go upon the land for a third time and was cutting and removing small trees, none of which were included in the sale of June 13, 1938, as coming within the meaning of the term "merchantable timber." In the petition it is specifically alleged that on the tract of land there are at present many trees and saplings "over the merchantable size of ten inches at the stump" which were not that large when the sale was made and which were not included therein, and plaintiff accordingly asked for a rule nisi to issue seeking an injunction by which the defendant would be restrained from going any further on the land and remove timber therefrom. He also prayed for damages in the sum of $50 for undersize trees which he claimed had already been cut and removed.
The defendant answered admitting the contract but denied all the remaining allegations of the plaintiff's petition. He admitted that he had gone upon the tract of land on more than one occasion in order to exercise his rights under the contract but that he had only cut a portion of the timber which he had bought. He denied especially that he had ever cut and removed any timber but what was merchantable timber as contemplated under the contract *Page 273 
and avers that there is quite a lot of it still located on the land which he is entitled to remove as he has in no way or manner abandoned the same nor has he exercised all his rights thereunder.
After trial of the rule nisi in the court below there was judgment in favor of the plaintiff ordering the same to be made absolute, and in accordance therewith a writ of preliminary injunction issued prohibiting the defendant from taking any timber from off the land "except that which was ten inches and over, one foot from the ground, in diameter, as to pine timber, and fourteen inches and over in diameter, one foot from the ground, as to hardwood, on the date of June 13, 1938," that being the date of the sale. Defendant vainly attempted to obtain a new trial and the matter was then submitted to the district court on the evidence taken on the rule, for judgment on the merits. Judgment was then entered ordering the injunction to be made permanent and defendant took this appeal.
With regard to a contract such as we here have under consideration, which involves the sale of merchantable timber and in which the purchaser is given a limited time in which to cut and remove it, there is one thing which seems to be definitely established in our jurisprudence and that is that the sale relates only to such timber as was merchantable on the date of the purchase. American Creosote Works, Inc., v. Campbell et al.,172 La. 866, 135 So. 659; Clark v. Weaver Bros. Realty Corporation, 197 La. 63, 200 So. 821. In this case therefore, the defendant only acquired what timber was merchantable on June 13, 1938, and could not claim that which became merchantable by reason of its added growth during the five year period he was given in which to cut and remove that which he had purchased. That no doubt is what the district judge had in mind in entering the decree he did and we do not think that the proposition stated is disputed by the defendant. The issue therefore seems to be centered in the meaning that is to be applied in this case to the term "merchantable timber" as used by the parties in the contract entered into between them.
Counsel for plaintiff contends that at least as far as pine timber is concerned it has been definitely established that the term refers to trees that measure ten inches in diameter, twenty-four inches from the ground. He relies principally on the case of Cooley et al. v. Meridian Lumber Co., Ltd., 195 La. 631,197 So. 255. But clearly the Court did not give a definition laying down any such arbitrary figures in that case. It is to be noted that in the contract that was being construed, the word "merchantable" was not used, the conveyance being merely one of "all the timber standing, being and growing on and upon" the land. Nevertheless the word timber was, in effect, held to mean what would generally be understood to mean merchantable timber for it was stated that "the general rule is that, where the word `timber' is used in a grant without qualifications or without specifications as to size, it means such trees as are suitable for the manufacture of lumber to be used for building and allied purposes." Also in interpreting the contract the court stated that the cardinal rule about seeking and ascertaining the intention of the parties, if that is possible, had to be observed, and following that rule, in order to determine what the parties themselves understood to be the meaning of the word "timber" as used by them in their contract, consideration had to be given "to the surrounding circumstances existing at the time the contract was made, the use then made ordinarily of trees severed from the land under a timber grant, the industrial enterprises then existing in the particular section which, by the use of timber, created a market for it, and the meaning and signification which the word `timber' had at that time."
In the case of Clark v. Weaver Bros. Realty Corp., supra, the point was made that because of the general economic depression during the years 1933 and 1934, when it was not profitable to manufacture trees into lumber, trees remaining on the land after it had been cut over should not be classified as "merchantable timber" even though they may have been of sufficient size to manufacture into lumber. The court [197 La. 63, 200 So. 822] however rejected the argument stating that "trees large enough to be manufactured into lumber are generally understood to be `merchantable timber'."
In Haigler v. Southern Advance Bag Paper Co., La.App., 142 So. 270, 272, the court found it necessary, in order to arrive at the intention of the parties to a deed like the one here under consideration, to interpret the term "merchantable timber" and in doing so, stated: "The smallest size of the timber in diameter *Page 274 
at the stump, ordinarily taken by the lumber companies in that locality at the date of the execution of the deed, is a proper manner of fixing what is, by custom and usage, merchantable timber, and thereby fixing the size of timber intended to be sold and purchased." That we think, is a clear and logical interpretation of the term and one which can safely be followed in this case.
Guided by it, and in the light of the testimony found in the record, we are led to the conclusion that the district judge was in error in holding that the sale of the pine timber in this case contemplated those trees only which measured ten inches in diameter, twelve inches from the ground, on June 13, 1938. R.F. Brown whose qualifications as an experienced timber man and estimator were admitted, testified that in the locality where this timber is situated, even further back than the year 1938, sawmill companies were taking trees from about six inches in diameter and upward. To the same effect is the testimony of W.C. Sullivan, timber man for the Crowell Longleaf Lumber Company, which he states, owns timber on land that is adjacent to the tract involved in this suit. On cross-examination he repeated that the mill he is connected with sawed trees as low as six inches in diameter and that they sell the lumber made from them.
We do not think however that the defendant himself ever contemplated his purchase to include trees as low as that as the testimony shows that he never cut one of that dimension. From some of plaintiff's evidence adduced by producing sample sections of a number of trees which defendant had cut, he seems to claim that even those ranging in diameter from eight and one quarter to nine and three quarters inches were undersize and therefore should not have been cut. But if, as shown, the mills in that locality were sawing trees as low as six inches, thus creating a market for them, then a tree measuring as much as eight inches necessarily must be classed as merchantable timber.
As already indicated, there is no proof in the record that defendant cut and removed timber measuring lower than eight inches in diameter and there is, on the other hand, abundant proof that there is a good bit of such timber still remaining on the land. It is shown that on about three acres that are under fence, he has never cut any trees at all and there are a good many large trees scattered over an area ranging from eight to twelve acres. It was merchantable timber when he bought it on June 13, 1938; he was at liberty to cut and remove it at any time within five years from that date, and the court therefore was without right to enjoin him from cutting it when it did on March 16, 1943.
We have no way of knowing if the testimony of the various witnesses referred to oak as well as pine timber. Some of it, we would say, was definitely limited to pine when the witnesses testified regarding the size of the trees they considered merchantable. If the remainder was meant to have reference indiscriminately to oak and pine, certainly no distinction was made as to the size of the trees and therefore we are at a loss to understand how the district judge arbitrarily fixed fourteen inches in diameter as the size of the hardwood timber contemplated by the purchase. No reason is advanced why there should be any difference made between the pine and the oak, the latter being the only hardwood timber conveyed in the deed.
As we are of the opinion that the judgment ordering the injunction, based on the decree which was entered, is erroneous, it will have to be reversed and set aside and as the time limit granted the defendant for cutting and removing the timber bought by him has expired since the rendition of the said judgment it becomes necessary to extend the same by a proper decree.
It is, for the reasons stated, now ordered that the judgment appealed from be reversed, set aside and annulled and it is further ordered that there be judgment in favor of the defendant, John A. Bennett, decreeing him to be the owner of all the timber acquired by him from the plaintiff, Calvin Bennett, in the deed of June 13, 1938, measuring eight inches in diameter, at the stump, as of that date, and that he be given an additional period of six months from the date on which this decree becomes final, to cut and remove the same from off the plaintiff's land.
It is further ordered that the plaintiff, appellee herein, pay all costs of this proceeding. *Page 275