The plaintiff in this suit alleges in his petition that for more than one year prior to August 5, 1943 he was in the actual, real, physical, uninterrupted and peaceable possession, as owner, together with his coheirs, of real property situated in the Parish of Vernon which is fully described in the petition, the description beginning with these words: "A tract of land — etc." He avers that his possession was a continuation of that which his father, John R. Bagents, Sr., commenced several years ago and which has existed for a period of more than thirty years.
He then alleges that on or about August 5, 1943, the defendant, acting through its agents and employees, entered upon the tract of land described and cut and removed a wire fence with posts, enclosing it, and cut and felled certain standing timber, clearing a right of way across it, thereby invading and disturbing his peaceable possession. He claims that by the illegal and unwarranted forceable trespass of the *Page 642 
defendant upon the land he has been damaged to the extent of $2,800 of which $1,500 is for the illegal and forceable trespass, $1,000 for the destruction and removal of the fence and posts and $300 for attorney's fees and expenses in connection with obtaining the injunction and restraining order which he prays for in his petition. It is to be noted that he does not ask to be restored to and maintained in possession of the property as owner or otherwise.
Upon what it considered sufficient showing, the district court granted plaintiff a temporary restraining order which was continued in force from time to time, and there was issued a rule nisi against the defendant for a temporary injunction. The rule was heard in due course and on evidence which the lower court deemed satisfactory, a temporary injunction was granted. Afterwards when the case was put at issue by answer filed on the part of the defendant, in which it pleaded its possession of the timber as a separate and distinct estate, separate and apart from the landed estate which the plaintiff claimed to possess, and also pleaded the precarious possession of the landed estate by the plaintiff, a trial was held resulting in a judgment in favor of the plaintiff making the temporary injunction permanent and awarding him damages in the sum of $500. From that judgment the defendant has taken this appeal. Plaintiff has answered the appeal asking for an increase in the amount of damages to $1,500.
[1] The principal contention made by the defendant rests upon what is more or less a fiction in the law that by the sale of the timber from off a certain tract of land there are created what has been held to be two separate and distinct estates; one the landed estate which remains in the title owner of the land itself and the other the timber estate which becomes the property of the purchaser of the timber, and all this regardless whether the timber has been segregated from the land or not. This separate tenure of different estates is nowhere provided for in our Civil Code which "recognizes but two kinds of estates in lands, the one corporeal and termed ownership, being the dominion over the soil and all that lies directly above and below it (C.C. art. 505); and the other incorporeal and termed servitude (including usufruct) being a charge imposed upon land for the utility of other lands or persons (C.C. arts. 533, 646, 647)". See Wemple v. Nabors Oil Co.,154 La. 483, 97 So. 666, 667. It finds its basis only in the statutory law as enacted by Act No. 188 of 1904 which provides that "standing timber shall remain an immovable, and be subject to all the laws * * * on the subject of immovables, even when separated in ownership from the land on which it stands, * * *."
The Supreme Court of our State has on numerous occasions stated that the effect of that statute was to create two distinct estates and it has recently reaffirmed the doctrine in the case of Clark v. Weaver Bros. Realty Corporation,197 La. 63, 200 So. 821.
[2, 3] With the defense resting on that proposition, we think it is important for us, in the first place, to consider the nature of the suit itself for there is a difference between a possessory action such as the defendant seems to construe it and a suit for an injunction which is authorized by Article 298 of the Code of Practice which plaintiff claims it to be. Whilst the nature and the extent of the possession might be said to be the same in both actions it is important to note that the purpose of a possessory action is to have the one who institutes it maintained in his possession as owner or usufructuary, whereas in the suit for injunction the purpose is to prevent any one from disturbing the plaintiff in his possession of a real estate, or a real right, of which he claims either the ownership, the possession or the enjoyment. C.P. Arts. 46, 47 and 298(5). According to the decisions it seems not to matter what is the nature of his possession, the essential element being that he has actually or constructively possessed for more than one year prior to the disturbance. He can protect that possession whether he is the real owner or not. Churchill Farms, Inc. v. Gaudet, 184 La. 984, 168 So. 123. We believe that that is the nature of the present suit, and the vital question that is presented involves the nature and the extent of plaintiffs' possession.
Under objection the trial judge permitted testimony offered by defendant to show how the possession now claimed by plaintiff originated in his father some thirty odd years ago. The purpose of this testimony was to impress upon the court the precariousness not only of the father's possession but to show also that neither the father nor his heirs ever had title to the property, a fact which would tend to weaken their possession. *Page 643 
[4] Assuming that the proof was properly admitted it shows that thirty years ago, plaintiff's father who owned his home property adjoining this tract of land obtained permission from the then owner of the land to fence it in as it is presently constituted for the purpose of pasturing his cattle. It seems as though at times the fence may have been a bit neglected and probably was not in a condition to hold cattle. The intention however always was that the property was possessed with the idea of maintaining it as a pasture. More than a year prior to August 5, 1943, the present plaintiff who is a young man, and who seemed to be acting for some of his brothers and sisters as well as for himself, repaired the fence and maintained a more or less solid fence surrounding the whole tract of land and whilst he did not pasture many cattle at a time, the property was actually occupied as a pasture for the period of one year prior to that date. There isn't much dispute on this point although the defendant has attempted to show that the fence was a rather poor one and also that it was taken down in one or two instances during the military maneuvers that were taking place in that area. It was not shown however when these maneuvers took place. We conclude therefore that the plaintiff did actually possess the tract of land for at least one year preceding the date of the alleged disturbance by the defendant, and the next important question is did his possession by means of this enclosure extend to the timber situated on it notwithstanding the creation of the separate timber estate and the alleged possession of that estate by the defendant.
The defendant, in support of its contention, seems to rely principally upon the two cases of Gray v. Edgar Lumber Co.,138 La. 906, 70 So. 877, and Green v. Longville Lumber Co.,147 La. 576, 85 So. 596. In the Gray case, the court, after stating that the segregation of the timber from the land by a sale separate from the land had destroyed its character as an accessory and converted it into a separate immovable, seems to hold 'that the timber could have been possessed by the owner separately from the land against the owner of the land. But under the facts of the case it appears that plaintiff, who claimed possession of the timber as well as of the land, claimed possession of the timber by virtue of his possession of a small fraction of the land only and the court held that his possession did not extend to the timber. The court quoted from the opinion of the trial judge who had stated that the evidence showed that the plaintiff was in actual possession of a small tract or portion of the land and that he cultivated about 15 or 20 acres and although he had held that such possession extended to the timber, the Supreme Court reversed him on that point. The distinction between that case and this one therefore seems to be rather plain when we compare the nature and the extent of the plaintiff's possession by virtue of his having enclosed the whole tract of land with a fence. The Green case is a bit stronger in favor of the defendant as there also the plaintiff's possession was by an enclosure. But very much unlike in this case the proof was that the title under which he possessed the land contained an acknowledgement that some one else had the right of possession of all the timber. In the present case although defendant tried to make the point that plaintiff never did claim possession of the timber, the latter never acknowledged any one else's possession of it. It is true that he may never have exercised any right of corporeal possession, never having had occasion, as he states, to do so, but the proof is that he did post the property with no trespass signs, that he refused the defendant's request to go upon the property and also had his attorney write a letter warning it against trespass.
We believe therefore that upon a consideration of the evidence along the lines indicated, plaintiff has sufficiently shown a possession of the whole tract of land, including the timber, notwithstanding the acts of possession performed by the defendant, which entitled him to the injunction to protect him in whatever rights he had in the property.
There is not much controversy on the point about a trespass having been committed by the defendant which created a disturbance entitling the plaintiff to the injunction which he sought. The defendant contends that its agents did nothing more than roll back the wire on each side of a gap that already existed in the fence but even this constituted a trespass. In addition to this however they entered upon the property and graded a right of way in order to build a tramway and also cut one tree if not more. Much also is said in argument about the Government military maneuvers having taken place over and across the property but as we have stated before there is no definite proof when these *Page 644 
maneuvers took place and, regardless of the time, we certainly don't believe that any use made of the property by the Government would justify a trespass on the part of any one.
[5] Counsel stresses the point that defendant had a legal right to go upon the property by virtue of a clause in the act of sale conveying the timber, giving it the right of egress and ingress. It may be that it had such a legal right but in view of the possession of the property by the plaintiff, of the trespass signs posted by him, of his refusal to accede to its request to go on the property and of the warning given by his attorney, it should have sought to enforce that legal right by other means than by simply going upon the property in the manner it did. Defendant could have had redress of the legal right which it now contends for by going into court and asserting ownership of the timber, or, when plaintiff refused its request to go upon the land, to force him to do so by means of a mandatory injunction. Either of these recourses of course would have led to an investigation into the title of the timber, a matter which for some reason best known to them, neither of the parties seems to care to go into at this time.
We have concluded that on the main issue in the case the judgment appealed from is correct, that the injunction properly issued and was properly perpetuated.
[6] With regard to the question of damages we have decided to hold the defendant accountable only for the actual damage sustained by the plaintiff by reason of the taking down of his fence. Whether in this case it was a valid one or not, defendant had a good legal basis on which to predicate the course it followed and we do not find that it acted in bad faith.
The cost of replacing the fence, according to the proof, is $153.50 which is what plaintiff is entitled to recover for that item. There does not appear to have been other damage done except probably the cutting down of one or two trees, the value of which has not been shown. We do not know that the grading of a right of way across the property caused damage and if it did would not know how to assess it.
We have concluded therefore to reduce the amount of damages awarded in the judgment appealed from and it becomes necessary to amend it in that respect.
For the reasons stated it is ordered that the judgment appealed from be and the same is hereby amended by reducing the award for damages from the sum of $500 as made therein to the sum of $153.50, and in all other respects it is affirmed.
The costs of the lower court are to be borne by the defendant and the costs of this appeal by the plaintiff, appellee herein.